On the night of February 3rd, 1946, between the hours of 10:30 and 11:00 p.m., a half-ton Ford truck owned and being driven by Darius Ardoin, accompanied by Curtis Perrodin and Nathan B. Fontenot collided in the rear of a one-and-one-half ton log truck owned by R. G. Garland and being driven by his son, Haskell Garland, accompanied by the latter's fiancee, Katherine Morein, in the front of the home of Dr. Arthur Vidrine on the Main Street of the Town of Ville Platte, in Evangeline Parish, Louisiana. As a result of the collision Curtis Perrodin received injuries from which he died, and Nathan B. Fontenot received serious injuries, which necessitated long hospital and medical treatment and from which he has apparently remained partially disabled. The driver of the half-ton truck received only mild bruises and cuts, and the driver of the 1 1/2-ton truck, which was run into, received no injuries, but his companion, then his fiancee, whom he later married, was jolted and no doubt suffered from shock. As a result of this unfortunate accident, suit was filed by plaintiff, the widow of Curtis J. Perrodin, for herself individually, and on behalf of her three minor children, born of her marriage to the deceased, in which it is alleged that the accident was caused solely by the negligence of Haskell Garland, which suit was filed against the said Haskell Garland, as driver, and R. G. Garland, trading under the name of R. G. Garland Lumber Company, as owner of the log truck, and against the Traders General Insurance Company, as insurer of R. G. Garland Lumber Company against liability to third persons for personal injury and property damages. The allegations of negligence are to the effect that the truck of the defendant herein was equipped with only a cab thereon and no body or trailer attached thereto; "that it had a large steel and wooden projection in the form of chassis sticking out for a distance of 10 or 15 feet from the rear of the cab and away from the wheels of said logging truck, without any reflector, lights, signs or warning signals of any kind or thereto attached; that because of the sudden stopping in said highway on the part of defendant's truck, and by virtue of an oncoming car giving out bright lights, visibility of the truck in which the plaintiff was riding was obstructed"; that in effect the unlighted truck was unseen until a moment too late to prevent the driver in the rear from colliding with it. The allegation is made that the sudden stopping of the truck in which the decedent was riding, on the part of the defendant's truck, was gross and wanton negligence and the proximate and immediate cause of the injury, suffering and death of decedent Curtis J. Perrodin.
Another case was filed on behalf of Nathan B. Fontenot, in which claim is made *Page 897 
for the personal injuries sustained by him and for damage resulting therefrom, including pain and suffering, disability and loss of income and based on the same allegations of negligence on the part of defendant's truck driver.37 So.2d 901.
The defendants filed answer admitting that the accident had occurred but denying all the material allegations of the petition and alleging that the accident was caused solely by the negligence of the plaintiffs and the driver of the half-ton truck in colliding in the rear of the defendant's 1 1/2-ton truck, which was properly equipped with lights, including a tail light and head lights and which was travelling in the same direction as the rear truck, at a reasonable rate of speed. The answer further avers that Haskell Garland, the driver of the Garland truck, as before stated, was driving in a safe and proper manner, with proper lights, on his right side of the highway and that the sole cause of the accident was the fact that Dallas Ardoin and his companions, Curtis J. Perrodin and Nathan B. Fontenot, were driving at a highly excessive rate of speed, in utter disregard of and in violation of the laws of the Town of Ville Platte, on its main street, in an intoxicated condition and without keeping a proper lookout. In the alternative, the defendants plead that if negligence on the part of Haskell Garland should be found, which is denied, then and in that event the plaintiffs herein should be found guilty of contributory negligence in that they both acquiesced in the driving of Darius Ardoin at an excessive rate of speed and while in a state of intoxication.
The two cases were consolidated for trial, since the evidence in both was the same, and after trial, the Court rendered judgment, supported by written reasons, dismissing both cases at the costs of plaintiffs. Plaintiffs have appealed.
The contentions of the plaintiffs in these consolidated cases are that Darius Ardoin, the driver of the 1-ton pick-up truck was driving on the paved highway in an easterly direction out of the Town of Ville Platte, between the hours of 10:30 and 11:00 p.m., on February 3, 1946, accompanied by the deceased Curtis Perrodin, and Nathan Fontenot; that they were driving on their right side of the road, at a reasonable rate of speed, and were going to visit some relatives of Darius Ardoin in the community of Plaisance, some eight miles to the east. Plaintiffs contend that they stopped on their way out of town at Thomas Reed's filling station, approximately three blocks from the point of collision. They further contend that the evidence shows that they were travelling at a reasonable rate of speed and that just prior to the collision they encountered an oncoming car with bright lights coming from the opposite direction just prior to arriving at the point where the defendants' truck had come to a dead stop at the intersection of the main paved highway and a road which leads north to the Tate Cove community and that the said truck, not being equipped with any reflectors or lights in its rear and without having given any signal of any kind, was unseen until too late to avoid a rear end collision on the part of Darius Ardoin driving the half-ton truck.
It is clear, therefore, that the plaintiffs rely entirely on the alleged gross negligence of the defendants in allowing an unlighted log truck to be driven on the main street of the town of Ville Platte, and on the negligence of the driver of said truck, Haskell Garland, in stopping this unlighted log truck in the path of the oncoming half-ton truck of Darius Ardoin without giving any warning signals whatsoever.
The defense contend that the evidence shows clearly that Haskell Garland was travelling, at the time of the impact, slowly and carefully, at a rate of speed of 15 to 25 miles per hour and that the truck had a tail light, clearance lights, and head lights as required by law, and that furthermore the accident occurred some 50 or 60 feet west of a street light, which clearly lighted up the area in which the collision occurred; that consequently the collision was caused solely by the gross negligence of Darius Ardoin in running into the truck at an excessive rate of speed and without keeping a proper lookout for traffic. The defendants further contend that there was no oncoming car with bright lights which in any way interfered with Darius Ardoin's driving, and that further that he and his companions, the deceased Perrodin and plaintiff *Page 898 
Fontenot were in an intoxicated condition, on a pleasure trip, and driving at an excessive rate of speed. Their main contention is that the accident was caused solely by the gross negligence of Darius Ardoin and that the evidence shows no negligence whatsoever on the part of Haskell Garland, the driver of the 1 1/2-ton truck ahead, or on the part of any of the other defendants. In the alternative, the defendants contend that if any negligence could be found on the part of Haskell Garland, that undoubtedly the evidence shows beyond a doubt that Darius Ardoin and his companions were intoxicated, and that Darius Ardoin, the driver of the half ton truck was driving at a highly excessive rate of speed, with the full acquiescence of his companions, and that therefore the claims made herein are barred by contributory negligence.
In support of plaintiff's contention that the accident was caused by the sole negligence of the defendants the evidence consists of the testimony of Darius Ardoin to the effect that when he struck the Garland truck, "it was standing still" and that the street lamp in question was not burning at the time of the accident, and moreover that he had not been drinking to any extent; having had one drink about an hour before the accident; that the truck did not have any tail lights or warning lights and had a protruding chassis of some 10 or 15 feet; that immediately prior to arriving at the scene of impact an oncoming car, with glaring lights blinded him; that in spite thereof he veered to his left with the view of missing the object, being the truck, which had stopped without warning or signals, but that, in effect, he was unable to prevent the collision with it.
Plaintiff Nathan B. Fontenot, testified very much to the same effect, and under cross-examination, denied that any one in the half-ton truck was intoxicated, although he did admit that prior to meeting Perrodin and Ardoin he had had a bottle of beer and that later he and his two companions had had a bottle of beer at the Curve Inn bar some two miles west of the Town of Ville Platte.
With reference to the presence of the street light and the condition of the occupants of the half ton truck, plaintiff called "Black" LaFleur and Eloi Soileau, two of the Ville Platte policemen. Both of these witnesses testified that Darius Ardoin, whom they saw shortly after the accident, at the scene thereof, did not appear to be drunk, but neither testified that he was sober. Their testimony on this point appears to be rather evasive. Officer LaFleur testified that the street light near the point of collision was burning. Officer Soileau apparently did not recall whether it was burning or not. Both of these officers testified that they examined the Garland truck after the collision and that it had no tail lights or reflector, but they both admitted, in effect, that they did not examine the damage to the truck by the collision and could not testify as to the condition of the lights prior to the collision.
On behalf of plaintiff, the wives of the deceased Curtis Perrodin and Darius Ardoin testified that Darius and Curtis were with them two or three hours prior to the accident and that at that time they were perfectly sober and in good condition. Their testimony does not have great weight, for the reason that the accident occurred some two or three hours after they were last seen by them.
Allen Lemoine, manager of the Light Company, called by plaintiff, testified mainly with reference to the street lights, and his testimony has little weight, for the reason that the street light in question was not seen by him on the night of the accident, but he did testify that the light was the same as other lights in the town and contained a bulb of 143 watts.
Thomas Reed, called by plaintiff, testified that a few minutes before the accident, Darius Ardoin stopped at his filling station for gas, and that he was accompanied by Fontenot, Perrodin and a fourth man, Anzy Pitre; that Pitre seemed to be drinking, and that Fontenot was drunk in the car; that he did not think that the other two, Darius Ardoin and Curtis Perrodin, were drunk.
The defence relied principally on the testimony of Haskell Garland, a young man of 25 years of age, the driver of the Garland truck, and Miss Katherine Morein, his companion, to whom he was later married. These witnesses testified positively *Page 899 
and without any hesitancy that they had been to the Platte Theater, some four or five blocks west of the point of the collision, on Main Street; that they drove to the American Inn, where they had a sandwich; that thereafter travelling in the 1 1/2-ton truck, they were proceeding east on the Main Street of Ville Platte, driving at about 15 to 25 miles per hour, going towards Opelousas, and that when they arrived at a point some 60 feet west of the Tate Cove road they were struck from behind by the Ardoin half-ton truck with a terrific blow and were pushed some 20 feet from the point of impact, and in a southerly direction across the south ditch of Main Street, into the fence of Mrs. J. E. Vidrine, some few feet west of the street lamp, which is located at the northwestern intersection of the Main Street and the Tate Cove road. These witnesses testified positively that the lights on the truck were in perfect condition; that they were merely travelling in the truck for the sake of riding, as two lovers will, and at a reasonable rate of speed at about 15 to 25 miles per hour; that they had no particular destination, but were travelling east towards Opelousas with no intention of turning at the Tate Cove road, and that no stop was ever made. They positively deny that any oncoming car with bright lights appeared just before the accident, and they both positively testify that the street lamp was burning, and that they had no reason whatsoever to anticipate a rear-end collision. They testified further that after the accident they talked to Darius Ardoin, and that he was intoxicated, and that they examined the half-ton truck and that the inside thereof smelled strongly of intoxicating beverage. Their testimony is to the effect that from the blow which they sustained in the rear of their truck, and the extent to which they were pushed, and the further fact that the truck which collided with them continued for a distance of about 50 feet, that it was undoubtedly travelling at a rapid rate of speed.
For the defendant, Lindsay Veillon testified that subsequent to the accident he observed the damage to the Ardoin and Garland trucks and he estimates from his experience that this damage shows that the Ardoin truck was travelling some 40 or 50 miles per hour when it struck the rear of the Garland truck.
Anzy Pitre testified for the defendant. He stated that he met Darius Ardoin and Fontenot at the Buckhorn Saloon some time prior to the accident; that Perrodin had a bottle of whiskey with him at the time, and that they all took a drink from this bottle; that all four of them then rode in the truck to Reed's filling station, at which time Ardoin drove 40 to 45 miles per hour from the Buckhorn Bar to the filling station, which is a distance of some two blocks; that when they arrived at Reed's filling station, all of them got out, except Fontenot, who was drunk and stayed in the pick up truck; that after they got gas, Ardoin drove back to the Buckhorn Bar, travelling very fast; that he, Pitre, then got off at the Buckhorn, and that Ardoin and his companions then left, driving in the direction of the Curve Inn, a bar some two miles west of Ville Platte.
Johnny Soileau testified that he was employed at the Curve Inn Bar as a Black Jack dealer, and that Ardoin, Fontenot and Perrodin came there and stayed from about 8:00 p.m., until 9:30 p.m.; that they played Black Jack and drank at the Black Jack table. He says they each had 3 or 4 or maybe 5 drinks.
Other witnesses in the case were Eldridge Vige, Karl Sensenbrenner, and Marshall Soileau, who happened at the scene of the accident shortly after its occurrence. Vige stated that he tried to get Ardoin to talk to him about the accident, but that he could find out nothing from him. He testified further that the pick-up truck was full of vomit and smelled of whiskey; that the street light at the scene of the accident was burning. Karl Sensenbrenner testified that he talked to Ardoin when he arrived at the scene of the accident and asked him who was with him, and that Ardoin stated that he did not remember; that Ardoin's speech was incoherent and that he had a thick tongue as if inebriated. Marshall Soileau stated that he talked to Ardoin and that in effect Ardoin did not seem to know what had happened and that he appeared to be drunk.
Archie Rollins, a young man of 17 years of age, testified, in effect, that he observed *Page 900 
the pick-up truck driving just prior to the collision; that he was standing in front of the Platte Theater on Main Street of Ville Platte some 4 or 5 blocks from the accident when it came by, that it was travelling at a very rapid rate of speed, and that shortly thereafter he heard a crash. The witness admits that he did not visit the scene of the accident, and his testimony is apparently offered to corroborate the defendant's contention that the pick-up truck was travelling at a fast rate of speed.
Burnett Jeansonne testified that he is an employee of the Garland Lumber Company and that it is a practice of said lumber company to keep all trucks in good repair and equipped with lights, but admits that he was not present at the scene of the accident, but that he observed the tail light of the Garland truck burning properly earlier in the evening.
Shortly after the accident Dr. Arthur Vidrine and Father Bourgeois in front of whose homes this accident occurred, appeared at the scene and assisted the deceased and the injured in their respective capacities as Doctor and Priest, and also assisted in removing the deceased and Fontenot on stretchers to Dr. Vidrine's hospital located nearby. Neither of these witnesses, who arrived at the scene after the accident, was called by either plaintiff or defendant, and in their respective briefs both plaintiff and defendant make the point that their testimony would have been adverse one to the other. Of course, it was incumbent upon plaintiffs to prove their case, and the testimony of these two witnesses could have established at least the question as to whether or not Darius Ardoin and his companions were in a state of intoxication. However, it seems rather apparent that these witnesses were not called for the purpose of saving them embarrassment, in view of their high positions and for the reason that whatever testimony they would have given would have been merely cumulative of the testimony given by the other witnesses in the cases.
From the testimony, it is our conclusion that the plaintiffs have failed to show any negligence on the part of Haskell Garland or the other defendant. The preponderance of the evidence shows that the truck with which Darius Ardoin collided was properly equipped with lights, including a tail light underneath the chassis on the left side. This is well borne out by the photographs of the trucks introduced in evidence.
It is further shown by the preponderance of the evidence that Haskell Garland, while courting his sweetheart, was travelling at a reasonable rate of speed and on his right hand side of the highway, and was acting normally in every manner. They had been to a picture show and had had sandwiches and partaken of no alcoholic drink and there is no evidence to show that they were not acting in a normal manner and not driving carefully just prior to the accident. The preponderance of the evidence also shows that the accident happened some 60 or 70 feet prior to arriving at the intersection of the Tate Cove road, which corroborates the testimony of Haskell Garland and Katherine Morein, to the effect that they were driving straight on and had no intention of turning at the time of the impact, and which shows that Darius Ardoin was mistaken in believing that the truck was stopped at the time of the collision.
Even if we could find any negligence on the part of Haskell Garland, the fact seems inescapable from the evidence that Darius Ardoin and his companions were at least guilty of contributory negligence. The preponderance of the evidence shows clearly that the three young men had been together for some two or three hours prior to the accident; that they had visited the Buckhorn Saloon and the Curve Inn bar; that they had partaken of alcoholic drink during that time and that naturally they were all three under the influence thereof; that they were on a pleasure venture; that Darius Ardoin was driving at a fast rate of speed with the complete acquiescence, if not encouragement, of the deceased and Nathan Fontenot. This latter fact is fully demonstrated by the physical facts; the fact that the half-ton truck driven by Darius Ardoin struck the left rear of the 1 1/2-ton truck of Garland with such force that it pushed it some 20 feet eastward, and then southerly across a ditch, into a fence, and the Ardoin truck then continued some 50 feet easterly, and that the front of the half-ton truck and the rear of the 1 1/2-ton log *Page 901 
truck were completely crushed. The photographs introduced show clearly the damage done to both vehicles. Moreover, the impact of this smaller truck into this larger truck was so great that Miss Morein, who accompanied Garland, was thrown onto the floor board of the truck.
And, in so far as the lights on the truck are concerned, it is true that subsequently to the accident the evidence shows that they were not operating, but this was explained by the fact that the battery was knocked off, and necessarily none of the lights could have operated subsequent to the collision.
It is our conclusion that the accident was caused solely by the gross negligence of Darius Ardoin, and by no negligence on the part of the defendants; but that, in any event, the plaintiff Fontenot and the deceased, as companions of Darius Ardoin in aiding and abetting him in driving his half-ton truck in a manner and under the conditions set forth, were at least guilty of contributory negligence which bars recovery in each of these cases, resulting from this most unfortunate accident.
For these reasons, the judgment appealed from is affirmed.