Plaintiff has instituted suit against the Fidelity Casualty Company of New York to recover the sum of $3,560, damages for personal injuries allegedly sustained by him while a guest passenger in the automobile of John Furey, the defendant company being the liability insurer of the said Furey.
Defendant denied that the driver of the automobile, Furey, was in any way at fault. The accident is admitted, but the defense is urged that plaintiff and Furey were engaged in a joint adventure and joint expedition for their mutual pleasure on the evening and night of the accident, and that, under the then prevailing circumstances, any acts of negligence on Furey's part were imputable to plaintiff. Defendant further pleaded that on the evening and night of the accident plaintiff and Furey indulged freely in drinking intoxicating liquors, until both, and each to the knowledge of the other, came under the influence thereof; that plaintiff was therefore independently and contributorily negligent when he knew, or should have known, that Furey was not in a physical or mental condition to prudently and safely operate an automobile; that this assumption of risk of injury as might result bars his recovery.
In the district court there was judgment in favor of defendant, dismissing plaintiff's suit, and plaintiff has appealed.
The record contains a stipulation of fact agreed upon by both parties. This stipulation, together with the other evidence submitted, discloses the following:
On the early evening of the accident, Furey drove to the home of plaintiff, where the latter joined him, and from there both departed in Furey's car to attend christening ceremonies at the home of a mutual friend. At this function they consumed a considerable amount of intoxicating liquors, and, deciding to continue their joint revelry, visited several saloons and bars, finally arriving at Lenfant's, a popular "drive-in" bar and restaurant in this city on Canal Boulevard, where they both continued imbibing. Becoming boisterous, disorderly, and a source of annoyance to the other patrons, their conduct provoked repeated complaints on the part of the proprietor, with the request that they "calm down". The testimony is somewhat conflicting as to the degree of drunkenness plaintiff and Furey attained during the time they were there.
Plaintiff testified that he did not remember leaving Lenfant's, or ever entering or being placed in Furey's automobile; that he has no recollection of the accident or how it occurred, having only regained his senses while receiving medical attention at the hospital to which he was taken. In the vernacular of revelers, he "passed out". He testified that the last thing he remembers is the rebuke of the proprietor and shortly thereafter falling off of a bar-stool on which he was seated.
Furey testified that shortly before leaving Lenfant's, on their last visit to said place, he and plaintiff stepped outside and an altercation occurred between them in which plaintiff took several "swings" at him. Refusing to retaliate, Furey again stepped inside the establishment, leaving plaintiff outside. Several minutes thereafter, Furey walked out, and, seeing plaintiff seated on the front seat of the car, entered and drove off. While so driving, presumably to return to their respective homes, Furey's automobile collided with the rear of another automobile parked against the curbing, resulting in plaintiff's injuries.
As to the negligence and fault of Furey in the matter of the accident and injury to the plaintiff, there can be no doubt.
Plaintiff insists that there was no evidence whatever presented which might establish negligence on his part which contributed to the accident. While he contends that he does not remember how he entered, or when he was placed in, the automobile, we have only his testimony to that effect. How he entered, whether by means of his own efforts, or through the aid of someone else, is not shown. While it appears that plaintiff knew the employees of the establishment, who might have assisted him to the car, or carried him there, none of them were called as witnesses, and, consequently, there is no evidence whatever to establish that he was assisted *Page 264 
in that respect. On the other hand, it is shown that plaintiff and Furey engaged in an altercation while on the outside, during which plaintiff made several "swings" at him and which induced Furey to again enter the bar, leaving plaintiff on the outside, and that shortly thereafter Furey left the place and found plaintiff seated in the automobile.
Unquestionably, on arriving at Lenfant's plaintiff knew the parking position of Furey's car. It is significant that Furey found plaintiff sitting therein. It would not be illogical to assume that immediately following his altercation with Furey, plaintiff walked towards and voluntarily entered Furey's automobile. Our learned brother below concluded that, inasmuch as plaintiff was able to, and did engage in fisticuffs, he was able to and did locate and enter Furey's car on his own volition and by means of his own efforts.
We cannot say that the trial judge is in error in his appreciation of the facts presented, or in the conclusion reached by him. We do not think the status of plaintiff, as regards responsibility for the accident, in contemplation of law, was any different from that of Furey. It cannot be disputed that they left their homes together to enjoy an evening and night of revelry, to the pursuit of which the consumption of intoxicating liquor was indispensable. They drank freely and continuously, each to the knowledge of the other, and both knew that they were under its influence. Sufficient time to regain soberness had not elapsed before the accident. Plaintiff had enough experience in life to discern when one was sober, or under the influence of liquor, and was thus able to appreciate the danger and risk of continuing to drink and overindulge with one whom he knew would operate the automobile in returning to their homes. He knew, or should have known, that by excessive drinking Furey would be deprived of his normal faculties and be unable to exercise the ordinary care and caution possessed by one when sober. He knew, or should have known, all of the facts, and had full opportunity of knowing them before continuing with his revelry. Their continued drinking was of sufficient importance to cause an apprehension of danger and an anticipation and realization of the peril in which he was voluntarily entering. One cannot close his eyes to obvious danger, or entrust his safety absolutely to the driver of an automobile when the same knowledge of obvious or threatened danger is possessed by both. Experiencing the exhilaration and sensations incident to the swirl and dash of a mixture of intoxicating liquor and rapid transit, plaintiff assumed the risks of danger attendant thereto. Certainly his attitude and conduct in the respects mentioned render him guilty of independent negligence sufficient in law to bar recovery. Richard v. Canning et al., La.App., 158 So. 598; Livaudais v. Black, 13 La.App. 345, 127 So. 129; Clinton v. City of West Monroe, La.App., 187 So. 561, 567.
Plaintiff, however, invokes the rule adopted by our brothers of the Second Circuit in the case of Clinton v. City of West Monroe, supra, in aid of his right to recovery.
In that case the court allowed recovery against the City of West Monroe when an automobile in which the deceased was an occupant ran into a ditch, which the city had negligently left open across the roadway without proper guards or warnings. The court denied recovery on behalf of other deceased occupants of the automobile for the reason that they and the driver had drunk freely of intoxicating liquors to the knowledge of each other and because they all knew, or should have known, that the driver of the car was in no condition to drive properly and safely, but which, nonetheless, rendered them guilty of independent and concurring negligence sufficient to defeat recovery. Clinton's status as a passenger was differentiated by the court from that of the other deceased occupants by the showing that he had not gone to the drinking establishment with the operator of the car, one Madden, or with the latter's associates, but had actually gone with another group of persons. After Clinton had reached a stupefied, drunken condition, wholly oblivious of his situation and of happenings about him, he was assisted to and placed in the Madden car by some of the persons in the Madden party. The court said: "Clinton's status as a passenger in the Madden car was not the same as that of the Goldens. He did not accompany the Madden party to the road house. He was not scheduled to return to his home nor to Ruston with them. He was Ledford's guest and but for the fact that he was loaded into the Madden car in a stupefied, drunken condition, he would doubtless be living today. He fell asleep from excessive drinking before being *Page 265 
placed the first time in the Madden car and when returned to the hall by Ledford, again went to sleep with his face in his hands on a table. In each instance, he had to be assisted by a man on either side to enable him to get into the car."
In the case before us, the status of plaintiff, quoad his occupancy of the Furey automobile, is quite different from that of Clinton in the cited case. There the factual situation permitting recovery is distinguishable and not apposite to the facts presented here. As we have said, plaintiff and Furey were associated together on an evening and night of frolic, and had visited various bars together, imbibing intoxicating liquors at their pleasure. They started out together and, at the end of their outing, were returning to their homes together. Such joint ventures had been frequently indulged in by them. It is quite unfortunate that they permitted their appetites for intoxicants to cause them to ignore the nature of their situation or the probabilities of its consequences.
The evidence convinces us that plaintiff was guilty of independent and contributory negligence, which defeats his right of recovery.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.