77 So.2d 131 (1954)
Paul Sidney BOURG et ux.
v.
The AETNA CASUALTY & SURETY COMPANY et al.
No. 3926.
Court of Appeal of Louisiana, First Circuit.
December 10, 1954.
Rehearing Denied January 28, 1955.
*132 Ellender & Wright, Houma, for appellants.
A. Deutsche O'Neal, Houma, for appellees.
CAVANAUGH, Judge.
This is a suit for damages by the plaintiffs, father and mother of William J. Bourg, who suffered a tragic death while riding in an automobile operated by Norvel Pitre, owned by his father, Andrew Pitre, and insured by the Aetna Casualty & Surety Company against public liability and property damage. The plaintiffs allege that their son was a guest passenger in the car being driven by Pitre and that Pitre drove the automobile into a concrete bridge crossing the canal or bayou at Bourg, Louisiana. Plaintiffs particularly plead the doctrine of res ipsa loquitur and without waiving any of their rights to a judgment in their favor based on the doctrine and plea they specifically allege that the defendant Norvel Pitre was negligent in the operation of said automobile and particularly allege the following acts of negligence: (1) Operating his father's automobile at a reckless and careless rate of speed in excess of 60 miles per hour; (2) Without warning and without caution suddenly swerving his automobile into the heavy concrete bridge causing the accident; (3) Not keeping a proper lookout; (4) Being drowsy, sleepy, tired or for some other unknown reason veered from the traveled portion of the said highway into the heavy concrete bridge; (5) Not keeping his automobile on the traveled portion of said highway.
The defendants filed a joint answer in which they admit the coverage by the insurance policy; admit the accident and that William P. Bourg was riding in the car with Norvel J. Pitre but affirmatively allege that he was not a guest passenger but that the decedent Bourg and defendant Pitre were on a joint mission of pleasure. The defendants then specially plead that defendant Pitre and Bourg was on a joint venture of fun and frolic on the date of the accident, commencing on the evening of January 5, 1954, and continuing to the time of the accident on January 6, 1954, which joint venture consisted of making a journey from Montegut to Houma together and attending cafes and nightclubs and consuming strong liquor together over said period of time in consequence of which any negligence of the driver Norvel Pitre in driving into the concrete post of the bridge at Bourg, Louisiana, is imputable to William J. Bourg and legally bars the plaintiffs from recovery. The defendants further allege that on January 5, 1954, about 7 o'clock p. m. defendant Pitre met William J. Bourg at Redmon's Bar in Montegut, Louisiana; they decided to go to Houma, Louisiana, in the 1951 Buick automobile belonging to Andrew J. Pitre *133 and which was being driven by defendant Norvel Pitre; that when they reached Houma, they had alcoholic drinks and they left Bonvillain's nightclub on East Park Avenue at 5 o'clock a. m. of the morning of January 6 to return to Montegut, Louisiana, with defendant Pitre driving the car; that during the night of January 5-6, 1954, Pitre and Bourg alternately bought a number of drinks for each other and they consumed drink for drink during said time.
Alternatively, the defendants plead that if the relationship of host and guest existed between Pitre and William J. Bourg that William J. Bourg was guilty of independent negligence in that he spent the whole night of January 5-6, 1954, with the defendant Pitre consuming in his company and with him intoxicating liquor which plaintiffs' decedent knew or should have known when defendant Pitre started to drive the return trip from Houma to Montegut at the time the accident occurred if he, the said Pitre, was mentally alert to drive safely and properly; and that without regard to his own safety plaintiffs' decedent assumed the risk of riding in a car driven by a person in the condition Pitre was in and yet at no time made any protest or complaint to defendant Pitre; that such acts of independent negligence on the part of plaintiffs' decedent contributed to the occurrence of the accident in which he was killed and that recovery by the plaintiffs is barred by such independent acts of negligence.
The defendants further plead alternatively that the attitude and actions of plaintiffs' decedent mentioned above as affirmative acts of negligence made him guilty of contributory negligence in placing himself in a position of danger; that the contributory negligence on the part of plaintiffs' decedent proximately contributed to the occurrence of the accident in which he was killed and recovery of damages by the plaintiffs is barred by such contributory negligence.
After trial on the issues reflected by the pleadings the district judge rendered judgment in favor of the plaintiffs and against the defendants, individually and in solido, in the sum of $5,000 each.
The defendants have appealed suspensively from the judgment.
We are not favored with a written opinion by the trial judge and do not know upon what grounds his decision was based. However, we gather from the briefs and argument of counsel that it was predicated on the ground that the plaintiffs established defendants' negligence by res ipsa loquitur or the acts of negligence alleged in operating the automobile and that defendants did not establish their special defense of contributory negligence.
The facts in the case reveal the following: Plaintiffs' deceased son and Pitre, the defendant, had been close friends and boys together since in grammar school. Bourg was 26 years old and Pitre 23. Pitre worked for the Texas Company as a radio operator and Bourg was captain on a boat used in taking oil field workers to rigs out in the marsh or Gulf from the mainland. On weekends they would party together and alternate in furnishing the transportation, some times Pitre father's car would be used and other times Bourg's automobile would be used in going from Montegut to Houma and other places.
On the evening of January 5, 1954, Pitre and Bourg met at Redmon's Bar in Montegut and it was there decided that they would go to Houma. Plaintiffs' decedent wanted to use his car but defendant Pitre insisted that he go and get his father's car because they had used the decedent's on the prior occasion. Bourg took his car to his sister's house an got his jacket and Pitre got his father's Buick automobile, which he was driving at the time of the accident, and picked decedent Bourg up at his home. They drove to Houma, had a couple of bottles of beer each at Dennis' Cafe. From there they went to Bonvillain's nightclub, saloon, and dance hall at Houma arriving about 9 p. m. They commenced drinking I. W. Harper and 7-Up, and met the Bergerons who were *134 drinking beer. Defendant Pitre bought the Bergerons a couple of rounds of drinks. The defendant Pitre and plaintiffs' deceased son remained in this bar drinking whiskey highballs from the time they arrived there until, according to the testimony, 3 o'clock a. m. the next morning. It is estimated by Pitre that they drank 8 or 9 whiskey highballs between the time they arrived there and the time they left and he said it could have been as many as 11. They left the dance hall between 4:30 and 5 o'clock that morning and the last thing the defendant Pitre remembers was going across the Daigleville bridge and talking to plaintiffs' decedent until they got to Mechanicville. After they arrived at Mechanicville, which is a mile or so before they reached the bridge where the fatal accident happened, the defendant did not remember anything.
The regular dance at Bonvillain's was over at midnight and all of the guests departed except Pitre, Bourg, the two Bergerons and their little girl. Columbus Bonvillain, who operated the bar, testified that between midnight and 3 o'clock a. m. Pitre and Bourg drank at least 6 or 7 whiskey highballs. He did not know how much liquor they had consumed before he went to work at midnight. When he closed the place between 4:30 and 5 o'clock a. m. the only guests in the establishment were Mr. and Mrs. Bergeron and their 14 year old daughter. The Bergerons had been at the establishment from 8 o'clock p. m. the night before until it was closed and defendant Pitre and Bourg had been there since 9 o'clock on that night.
The substance of the testimony of Columbus Bonvillain and Mr. and Mrs. Bergeron is that the defendant Pitre and his companion Bourg were not drunk. Neither Mr. nor Mrs. Bergeron remember very much of what happened in the nightclub prior to their early morning departure. He states that he worked the next day and they only lived a couple of blocks from the establishment.
Ray Boudreaux, the State Trooper who investigated the accident, stated that he went to the scene of the accident and arrived there about 5:45 a. m. That the car was going south and left the right side of the road and traveled 100 feet on the wrong shoulder of the road from in front of Mr. Prevost's house and that he could see from the tire marks of the car that it led straight to the bridge and that if the bridge had not been there the car would have gone into the bayou; that it struck the left side of the bridge and that about 2 feet of the concrete bridge had gone up into the car; that it made a V-shaped dent in the car and it had hit the point of the bridge and it was his opinion that there was a hard impact; that he found the decedent Bourg lying across the front seat with his head near the steering wheel and that he was dead when he arrived there; that the driver Pitre told him that the accident happened at approximately 5 o'clock. He talked to defendant Pitre about an hour and a half after he had been at the scene of the accident and that Pitre told him that he did not remember how the accident happened; that the last thing he remembered was leaving the Daigleville bridge.
Under the pleadings and the evidence adduced on the trial of the case we are of the opinion that the following questions are submitted for decision in the case:
(1) Is the doctrine of res ipsa loquitur applicable to the facts in this case?
(2) Did William J. Bourg, plaintiffs' decedent, assume the risk of riding with a driver whom he knew, or should have known, was not in a condition to drive safely on account of imbibing too freely in intoxicating liquor?
(3) Was plaintiffs' decedent contributorily negligent or independently negligent in riding with an automobilist with whom he had previously imbibed freely in intoxicating liquors?
In view of the fact that the occupant Bourg was killed in the accident and the defendant Pitre did not remember anything about the accident or after he had crossed the Daigleville bridge or near Mecanicville and could not tell how it happened *135 we are confronted with the proposition of whether or not the doctrine of res ipsa loquitur applies. This Court in Gomer v. Anding, 146 So. 704, 707, said:
"Res ipsa loquitur, translated literally, means `the thing (or act) speaks for itself.'
"It is a phrase used to express tersely a rule in the law of negligence to the effect that, where the fact of an accident exists and the attending circumstances are of themselves sufficient to justify an implication or inference of fault or negligence on the part of the defendant, making out a prima facie case as it were, the task then devolves upon the defendant to present an explanation to exculpate himself from the legal presumption that is thrown around him. It is not a shifting of the burden of proof, but the imposition of the duty of explaining that the accident and resulting injury was not due to his want of proper care. This duty arises from the fact that the agency or thing which caused the injury was under his control and management, and the happening was such as does not usually occur when due care has been exercised.
"The doctrine is well recognized in all courts of the country, and has been frequently applied by the appellate courts of this state, as is amply shown in the review of decisions to be found in the case of Monkhouse v. Johns, from the Court of Appeal, Second Circuit, reported in 142 So. 347.
* * * * * *
"`Q. You will not state to the Court whether or not a car did blind you? A. No. I can't do it. My impression was a car did blind me, but I am not positive about it.'
"And then, making it a clear case coming within the doctrine of res ipsa loquitur, we find the following question and answer in his testimony: `Q. I am going to ask you to state to the Court Mr. Anding, your explanation of how you happened to drive your car into the balustrade of this bridge? A. I can't explain it, I don't remember exactly how it happened.'"
Of course, since the defendant Pitre did not remember anything after he crossed the Daigleville bridge or just after he reached Mechanicville which was a good distance before he drove the car off the road and into the bridge we believe that the plea under the facts in the case could successfully be made by the plaintiffs. The plea was made and held applicable to the facts in the case of Livaudais v. Black, 13 La.App. 345, 127 So. 129, although the plaintiff's demand was rejected on account of a successful plea of contributory negligence which was urged in that case similar to the one that has been urged here.
However, we find the following statement in Louisiana Law Review, Vol. 4, page 105, by Professor Wex S. Malone of the Louisiana State University, in which he questions the applicability of the plea when the trial of the case discloses detailed evidence of negligence or circumstances surrounding the accident where such carelessness on the part of the driver could be readily inferred:
"The most misleading group of res ipsa loquitur cases in Louisiana are those which contain broad statements entirely by way of dicta to the effect that a passenger in a private automobile who is injured in virtually any sort of mishap can rely upon the doctrine. These cases are numerous, but without exception they either disclose detailed evidence of negligence or the circumstances surrounding the accident were such that carelessness on the part of the driver could readily be inferred. Injuries to passengers in private vehicles can be inflicted under a wide range of circumstances, some of which may give rise to a ready inference of negligence, while others do not. The generalities on res ipsa loquitur often indulged by the courts in these cases add little weight to the decision."
*136 We will treat the last two propositions together because they in effect mean the same thing. The evidence unquestionably shows that defendant Pitre and plaintiffs' decedent Bourg went out together on this pre-arranged party for frolic and fun. They consumed between 8 and 11 drinks of liquor and also two bottles of beer within an interval of 10 hours. They both had worked the night before and Pitre did not arrive at Houma until 2 o'clock p. m. on the day of the party. He and decedent Bourg got together about 7 o'clock that evening and pre-arranged an evening for fun and frolic. They first had the two bottles of beer apiece at Dennis' Cafe about 7 o'clock p. m. and then went to Bonvillain's saloon and dance hall, arriving there about 9 o'clock. The evidence is not certain as to what quantity of liquor they consumed between 9:00 and 12 o'clock p. m. on that night but the bartender Bonvillain says he served them 6 or 7 drinks apiece between midnight and 3 o'clock a. m., which was only two hours before the tragedy occurred. They would have averaged a drink every 30 minutes within that period without considering their prior indulgence between 9 o'clock p. m. and midnight.
It is true that the defendant Pitre said he was not drunk but he also said he was not normal. He also stated that he had drank a greater quantity of liquor on prior occasions. Plaintiffs' decedent was with him during the entire time and under the testimony of Bonvillain and Pitre consumed the same quantity of liquor or as much as defendant Pitre did. Plaintiff argues that since the bartender and the Bergerons thought that the two boys (Pitre and Bourg) were not tight and all right that they were not under the influence of intoxicating liquor. The fact that the operator of this saloon kept open until nearly 5 o'clock waiting for them to leave, coupled with the fact that they had consumed at least 8 or 10 drinks of whiskey apiece as well as two bottles of beer continuously over a period of 10 hours without any rest or sleep for the previous 24 hours before the accident occurred, indicates that they were under the influence of intoxicating liquor. When we review this evidence showing the continuous drinking for a period commencing at 7 o'clock p. m. and continuing until the next morning at 3 a. m., followed by one of the parties not remembering anything within four or five blocks after he left this saloon and remembering nothing about driving an automobile off of a highway and colliding with the bridge, causing the death of his companion and seriously injuring himself, the only impelling inference which could logically be inferred was that the driver Pitre was under the influence of the liquor he drank at Bonvillain's to such an extent that his ability to operate a dangerous instrumentality such as an automobile was impaired. The fact that the bartender Bonvillain and the Bergerons thought that Pitre and Bourg were not drunk or intoxicated to such an extent that their mental or physical faculties were impaired is only their opinion considered in the light of what they thought the term drunk or intoxicated implied. There are several stages of drunkenness or intoxication. We find the following in Vol. 13, Words and Phrases, Drunk, page 420:
"A man is said to be `dead drunk' when he is perfectly unconscious-powerless. He is said to be `stupidly drunk' when a kind of stupor comes over him. He is said to be `staggering drunk' when he staggers in walking. He is said to be `foolishly drunk' when he acts the fool. All these are cases of drunkenness, of different degrees of drunkenness. So it is a very common thing to say a man is `badly intoxicated,' and again that he is `slightly intoxicated.' There are degrees of drunkenness and therefore many persons may say that a man was not intoxicated because he could walk straight; he could get in and out of a wagon. Whenever a man is under the influence of liquor so as not to be entirely himself, he is intoxicated; although he can walk straight. Although he may attend to his business, and may not give any outward and visible signs to the casual observer *137 that he is drunk, yet if he is under the influence of liquor so as not to be himself, so as to be excited from it, and not to possess that clearness of intellect and control of himself that he otherwise would have, he is intoxicated."
We have to take judicial notice of what is common knowledge and human experience. As the court said in Elba v. Thomas, La.App., 59 So.2d 732, 736:
"`This Court can take judicial notice of what is common knowledge and human experience. Anyone who has indulged in alcoholic beverages knows that it dulls perception and reflexes to the extent that one cannot react normally to impending emergencies and dangers.'"
Plaintiffs' learned counsel has ingeniously endeavored to distinguish the case at bar from the cases of Mercier v. Fidelity & Casualty Co. of New York, La. App., 10 So.2d 262; Elba v. Thomas, supra; Livaudais v. Black, 13 La.App. 345, 127 So. 129; Richard v. Canning, La.App., 158 So. 598; Clinton v. City of West Monroe, La.App., 187 So. 561, on the ground that the cited cases show a higher state of intoxication or drunkenness. It may be that those cases show that the parties involved by their actions exhibited a greater state of drunkenness or intoxication. We know that intoxicating liquor does not affect all people the same. Some it makes jovial, others mean and uncontrollable and still others drowsy and sleepy. It is our opinion that when Pitre entered the car to drive home, and passed out within a short time after he left the saloon, and only a few blocks from it, he was under the influence of intoxicating liquors, and it was known, or should have been known, to his companion Bourg, who was with him during the entire time and drank freely with him.
We believe that the special defenses of independent and contributory negligence on the part of plaintiffs' decedent was clearly established on the trial of the case and plaintiffs' demands should have been rejected. See Perrodin v. Garland, La.App., 37 So.2d 896; Fontenot v. Traders & General Insurance Co., La.App., 37 So.2d 901.
We regret that under the facts in this case we are compelled to reverse the judgment of the trial judge but the evidence does not warrant a judgment in favor of the plaintiffs.
For the reasons assigned the judgment appealed from is avoided and reversed and plaintiffs' demands are rejected at their costs and their suit dismissed.
Rehearing denied.
TATE, J., recused.
CAVANAUGH, Judge ad hoc by appointment.