115 So.2d 232 (1959)
Troyce C. WOODS, Plaintiff-Appellant,
v.
Mary E. KING et al., Defendants-Appellees.
No. 9063.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1959.
Lee, Taylor, Harris, Finley & Coyle, Shreveport, for appellant.
Bodenheimer, Looney & Richie, Shreveport, for appellees.
GLADNEY, Judge.
The plaintiff, Troyce C. Woods, has appealed from a judgment denying damages for personal injuries received by him while riding in an automobile owned and operated by Mary E. King, who, with her liability insurer, Indiana Lumbermen's Mutual Insurance Company, are the defendants herein. A jury verdict rejected plaintiff's demands, after which his counsel filed a motion for a new trial averring therein numerous errors as cause for setting aside the jury verdict. This motion was overruled by the trial judge who set forth written reasons for his ruling. This appeal followed.
The accident in which plaintiff was injured occurred during the early morning hours of October 26, 1959, when the vehicle driven by Mary E. King crashed into a telephone pole located in the 2500 block of Southern Avenue, in Shreveport, Louisiana.
The record reveals the circumstances here related which have an important bearing on the outcome of the case. Troyce C. Woods drove his automobile to Sutton's Drive In, on the evening of October 25, 1958, and shortly thereafter he was joined by Mary E. King, Myrtle Smith and Vernon Hooker, Jr. The group drank a number of beers. Later, about 11:30 o'clock P.M., the party drove in Woods' car to Bossier City where they had more beer. Upon the closing of Blue's Red Devil, it being Saturday night, the parties, upon finding the battery in Woods' car was dead, ordered a taxi and returned to Sutton's Drive In. There they acquired beer in cartons and drove in Mary E. King's car to Woods' house. They again drank beer and after the lapse of some time Mary E. King and Woods returned in Mary King's car to Sutton's Drive In for the purpose of securing sandwiches *233 and cigarettes. On the trip back to Woods' home the accident occurred.
Woods testified he was leaning over to light a cigarette at the moment the vehicle crashed into the telephone pole and he did not know what caused the accident.
Appellant first complains of errors committed by the court prior to and during the trial of the case. These complaints were incorporated in his application for a new trial and all were discussed fully in the written reasons of the trial judge. The errors assigned by counsel for plaintiff embraced: (1) the failure of the defendant, Mary E. King, to take the stand for direct examination; (2) the omission of the trial judge to give certain special charges; (3) his action in repeating his charge to the jury as to the assumption of risk doctrine; (4) the refusal of the judge to compel the production of a written statement of Mary E. King when requested under subpoena duces tecum in accordance with LSA-R.S. 13:3762; (5) the curtailment of the cross examination of Mary E. King by counsel for impeachment purposes; and (6) the limitation of the trial judge of plaintiff's opening statement to the jury.
The trial judge in his opinion, gave the following answer to the charges so made:
"This suit was tried before a jury whose verdict rejected plaintiff's demands. Plaintiff has now filed a motion for a new trial, alleging that the verdict of the jury is contrary to the law and the evidence `in the following particulars, to-wit'. He then sets out three errors alleged to have been committed by the Court in making certain rulings in the procedure of the case, and three errors with respect to the charge by the Court to the jury, but none to the admissibility of evidence.
"In considering this motion, we point out the following: First, no bills of exception were reserved by plaintiff throughout the trial; second, no allegation is made that any of the acts complained of prejudiced the jury; third, plaintiff does not allege any fact wherein the verdict of the jury was contrary to the evidence.
"The trial judge, like counsel for plaintiff, is inexperienced in the trial of civil jury cases. We point out that no bills of exception were reserved by plaintiff during the progress of the trial, as required by C.P. 488. Plaintiff contends, however, that bills of exception are not required under Act 61 of 1908.
"The Supreme Court, in Stovall [& Sons] v. Hubier, 143 La. 1028 [79 So. 830], held:
"`A supplemental petition which has been dismissed on an exception of want of jurisdiction filed by the defendant is not subject to review and consideration by the appellate court where no objection was made to the ruling of the district court thereon or a bill of exception reserved thereto.'
"In the case of Hawkins v. Costl[e]y, [169 La. 229], 124 So. 837, the Supreme Court held that Act 61 of 1908, relieving a litigant of taking formal bills of exception applied only to the admissibility of evidence.
"The foregoing is especially applicable to the three complaints made by plaintiff with reference to the motion for a subpoena duces tecum for the production of an alleged statement made by one of the defendants to Jas. F. Arnold, which motion was granted and then, on objection of defendant, recalled; and thereafter refiled, submitted, and overruled.
"Plaintiff contends that the Court should have charged the jury that the failure of Mary E. King, defendant, to take the stand in her own behalf created a presumption that her testimony *234 would be unfavorable to the defendants' case. No request was made for the Court to so charge the jury, although after the Court had concluded its charge, he turned to counsel and inquired if there was any additional matter, and they stated `no'. Furthermore, no exceptions were reserved to the Court's charge to the jury as given.
"We are of the opinion that we read to the jury plaintiff's special charges, with the exception of one or two; but if we did not so charge, we gave the substance of these special charges and, at the conclusion of the charge, as stated above, we inquired of counsel if there was anything additional, and no objection to the charge or request for a clarification or change was made. Our charge to the jury was oral. We fully explained the doctrine of res ipso loquitur, and at the conclusion of the charge we summarized, about in the following manner:
"`Damage suits are based on fault, and the first thing you consider is whether or not the defendant was at fault, as heretofore explained to you; and if no fault, that ends the case. But if you find fault on the part of defendant, you would then determine whether or not the plaintiff was guilty of contributory negligence or had assumed the risk, and if you find that defendant Mary E. King was under the influence of intoxicating liquor to such an extent that it affected her ability to drive an automobile, and that the accident was caused thereby, then you determine whether or not the plaintiff knew of her condition and assumed the risk. If so, you would find for the defendant.'
"We did not `repeatedly' charge the jury in connection with the assumption of risk.
"With respect to the subpoena duces tecum, plaintiff's counsel stated that he had seen a written statement given by Mary E. King to one J. F. Arnold; that he had talked to Mrs. King, and he had taken her depositions before the court reporter, and that she had made conflicting statements; but his pleadings did not so indicate, and on objection by defendant we recalled the subpoena. Plaintiff called Mrs. King on cross-examination, and examined her at length on all matters pertaining to the case. He then examined her with reference to her contradictory statements made before the court reporter and her statements said to have been contained in her written statement to J. F. Arnold. She repeatedly stated that she did not know how much beer she had takenat one time she had stated it was three or four cans of beer, at another time that it was six to eight and that she did not know how many she had taken. She admitted that she had told J. F. Arnold that she was not `drunk'. On the trial of the case she stated she was not drunk but was `tight', and did not remember how the accident occurred. As we understood, the request for the production of the written statement was with reference to the amount of beer Mrs. King had imbibed, and whether she was under the influence of liquor at the time of the accident. Since she had admitted the contradictory statements, and since she had not taken the stand in her own behalf, we overruled the request when filed, `for the time being'. It was never thereafter requested. While Mrs. King was on cross-examination, and was being asked with reference to the written statement, counsel stated that the statement was desired for the purpose of impeachment. We erroneously stated that it was improper to call a witness on cross-examination and then attempt to impeach the witness, but that one should wait until the witness took the stand in her own behalf, and then propound the impeaching questions. In the present case, Mrs. *235 King was not called as a witness in her own behalf, as she had fully given all the information with respect to the accident while she was under cross-examination by plaintiff. We do not know wherein our ruling prejudiced the jury, since Mrs. King had admitted making contradictory statements.
"As before stated, we charged the jury at length on the doctrine of res ipsa loquitur, which had the effect of saying that the evidence showed that she was at fault in causing the wreck of the automobile. The case, in our opinion, hinged solely on the question of whether Mrs. King was under the influence of liquor, which affected her driving, and that plaintiff was aware of her condition and assumed the risk; the testimony showing that the two men and the two women, in their thirties, were married and separated from their spouses and were out on a party celebrating plaintiff's birthday; that they drank beer at one place, then went to another nightclub and drank more beer, then purchased two cartons of beer and repaired to the home of one of the men, and then drank more beer, and then plaintiff and defendant, in defendant's automobile, went for sandwiches, when the wreck occurred. The quantity of beer that the parties drank was a basic fact. All of them admitted drinking at the time and places statedthe quantity running from three cans each, or more.
"The policeman who was called to the scene of the wreck, and arrived while plaintiff and defendant were still in the wrecked automobile, found several empty beer cans and some not empty in the car, and that Mrs. King was heavily under the influence of liquor.
"Plaintiff alleges that the Court was in error in restricting plaintiff's opening statement (to the jury) to such an extent that he was not permitted to outline the facts surrounding the accident, etc. After the jury was empaneled, plaintiff was instructed to present the case to the jury. Counsel began by stating what he expected to prove by certain witnesses. We then stated to counsel that this was improper, and he should state the issues involved in the case, that is, the nature of the case as set forth in the pleadings. No bill of exception was reserved to the Court's ruling, and no prejudice of the jury is alleged or shown.
"In view of the fact that plaintiff reserved no bills of exception, and in view of the fact that the verdict of the jury was in accordance with the evidence in the case, a new trial should not be allowed, and the motion therefore is overruled."
Although it would appear the contentions of counsel have been sufficiently answered by the judge in the foregoing opinion, we think it proper to make several comments. The transcript does not show the circumstances giving rise to the errors of which complained and enumerated 2, 3, 4 and 6 above, except as stated in the opinion of the trial judge. Thus, subject to that exception the record does not expressly show what special charges were not given, it does not reflect the final ruling of the court as to the enforcement of the subpoena duces tecum, nor does it contain the verbatim charge to the jury by the trial judge. Counsel for plaintiff also says the court repeatedly charged the jury as to the doctrine of assumption of risk, but there is nothing in the record to indicate the court did this, or that counsel objected. Manifestly, when these matters are dehors the record no action can be taken by this court. We do take the position, however, that forasmuch as the trial judge has scrupulously and carefully presented and answered the matters complained of in the application for a new trial in his written opinion which partakes of the nature of a per curiam, the absence of bills of exceptions should not prevent our review.
*236 Code of Practice articles 488, 489 and 489.1 do not completely relieve counsel of having placed in the record the objection to any action of the court, or other matter deemed prejudicial, and the ruling of the judge on such objection. Cf. An excellent article by Ben Perkowski, Jr., entitled "The Necessity For The Taking Of A Bill Of Exceptions In Civil Cases In Louisiana", 21 Tulane Law Review, 632, 638. After due consideration of the record and the written reasons of the trial judge, we fail to find plaintiff's rights have been prejudiced by any error of omission or commission by the trial judge. Furthermore, under the constitutional grant of authority to this court it may review all facts considered upon the trial of the case.
Our consideration of the case on its merits discloses the defense of assumption of risk or contributory negligence, specially pleaded by defendants, presents the decisive issue. The plea asserts Mary E. King was under the influence of intoxicants at the time of the accident to the extent her ability to drive her automobile was so impaired, and that such condition was obvious to plaintiff, and he knew or should have known it was unsafe for him to accompany the driver.
Courts have on frequent occasions endeavored to work out an equation by which it could be determined that a motorist was too inebriated to be driving a vehicle. Thus, in Futrell v. Pacific Indemnity Company, La.App.1955, 79 So.2d 903, 906, 907, it was said:
"To prove that one is incapable of operating a motor vehicle, it need not be shown that he was drunk but only that he had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties and cause such faculties to be materially impaired."
In Elba v. Thomas, La.App.1952, 59 So. 2d 732, 735, counsel questioned the sufficiency of the evidence tendered to show the defendant's condition. The appellate court quoted with approval the following statement of the trial judge:
"This court does not hold as a matter of law that one who has had a drink or two just before driving an automobile must necessarily be guilty of negligence if he should have an accident. Nor does the Court attempt to hold that it takes one, two, three or more drinks to render a person incapable of safely driving an automobile, as liquor has more or less effect upon individuals according to various conditions, such as age, sex, physical condition and its accustomed use.
"This Court can take judicial notice of what is common knowledge and human experience. Anyone who has indulged in alcoholic beverages knows that it dulls perception and reflexes to the extent that one cannot react normally to impending emergencies and dangers.
"This Court does hold, however, that when one has attended a party from 8:00 p. m. to 2:30 a. m., where liquor was served freely and it is admitted that he had at least three or four drinks; where he is too dazed to know where the accident happened; that he failed to take the stand and explain testimony that he was glassy-eyed and staggering as though drunk, and was travelling excessively and headlights not burning, the conclusion is inescapable that he was intoxicated at the time and that his intoxication was one of the contributing factors to the accident."
In Mercier v. Fidelity & Casualty Company of New York, La.App.1942, 10 So.2d 262, it was held that where the evidence showed that an automobile driver upon emerging from a barroom shortly after a fight with a companion with whom he had engaged in a night of revelry until both were intoxicated, and found his companion seated in his automobile, the evidence warranted a finding that the companion voluntarily *237 entered the automobile, thereby assuming the risk attendant to entrusting his safety to the driver whom he knew or should have known was intoxicated, and accordingly the court affirmed a dismissal of plaintiff's action.
It is our appreciation of the evidence herein adduced that as of the time of the accident Mary E. King was not in possession of her normal mental and physical faculties, and plaintiff, her drinking companion of the evening, knew or should have known of this condition. By thus voluntarily riding with the driver in such condition, his right to claim damages is thereby barred. The evidence fully supports these findings.
Testimony concerning the condition of Mary E. King given by her three companions of the evening and morning of October 25th and 26th, principally relates to the quantity of beer consumed over a period of approximately three hours. Mary E. King and Vernon Hooker, Jr. gave testimony which clearly indicates that Mary E. King drank six or eight, or more cans of beer, which was entirely too much to drink and she should not have been driving her automobile when it crashed into the telephone pole on Southern Avenue. Mary E. King admitted she was tight and she could give no explanation of how the accident occurred, merely stating that she could not remember. Woods testified he had only three beers and that he did not know how the accident occurred because he was engaged at the time in attempting to light his cigarette. Myrtle Smith and Woods testified each of the four drank only three cans of beer during the three hour interval. A taxi driver, W. N. Willis, who drove the group from Blue's Red Devil in Bossier City to Sutton's Drive In, said he did not notice they were drunk but that they appeared to him to be "fairly sober". Plaintiff also called as a witness Donnie McGinty, a waitress at Sutton's Drive In. The record indicates, however, that neither Willis nor Donnie McGinty had very much opportunity to observe whether or not Mary E. King was overly intoxicated at the time of the accident. Perhaps the most reliable evidence comes from a police officer, Lewis M. Atkins, who was present immediately after the accident. He testified when he opened the car door and talked to Mary King she said she did not want to go to the hospital, that she was talking thick-tongued and her eyes were glassy. He found a dozen or two cans of beer scattered all over the car, and some had rolled out on the street; that some of the cans had previously been opened. He said when he helped put Mrs. King on the stretcher the odor of alcohol was very strong. He also stated that the odor of alcohol was very strong on Woods.
It is our finding the record fully supports the verdict of the jury and the decision of the trial judge in refusing a new trial.
Accordingly, the judgment from which appealed is affirmed at appellant's cost.