124 So.2d 254 (1960)
Joe Harold DOWDEN, Plaintiff-Appellee,
v.
BANKERS FIRE & MARINE INSURANCE COMPANY, Defendant-Appellant.
No. 9250.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1960.
On Rehearing October 27, 1960.
Rehearing Denied December 1, 1960.
Certiorari Denied January 9, 1961.
Bodenheimer, Looney & Richie, Shreveport, for appellant.
Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellee.
AYRES, Judge.
By this action plaintiff seeks to recover damages for personal injuries, pain and suffering, and cost of hospital and other medical treatment as the result of injuries sustained in an automobile accident which occurred about 4:00 a. m. December 28, 1958, while he was a guest passenger of Lem A. Pyle, Jr., defendant's assured.
The location and physical facts as to the occurrence of the accident are not in dispute and may be briefly stated. Pyle, in his Chevrolet automobile, accompanied by plaintiff, was driving in a westerly direction over the old traffic bridge across Red River between Shreveport and Bossier City. At the time, a dense fog prevailed. The accident happened in a curve on the bridge near the west, or Shreveport, end. The car first struck the retainer wall and pedestrian guardrail on the driver's left, or south side of the bridge, then struck the bridge span itself and, after proceeding some distance along the retainer wall, swerved to the right across the bridge and struck the north side thereof. Thus, after ricochetting from one side of the bridge to the other the car turned over. By force of the impact, plaintiff was knocked and thrown through the windshield out of the car and, on arrival of the investigating officers, was found some seven or eight feet distant from the car on top of the windshield, which had likewise been knocked and thrown from the car. Pyle was found some 70 feet from the car between the retainer wall and the guardrail of the bridge. Both Dowden and Pyle, severely injured and in, at least, a semiconscious *255 state, were, on the arrival of the officers, suffering excruciating pain.
While relying primarily upon the doctrine of res ipsa loquitur, plaintiff alleged that the accident and the injuries and damages resulting therefrom were due to the gross negligence, lack of skill, and want of care on the part of Pyle in the nonexclusive particulars of failing to keep a proper lookout, or to keep his vehicle under control, and in driving at an excessive rate of speed.
The defense is that Pyle was under the influence of intoxicating liquors, a condition known, or that should have been known, by plaintiff who is thereby alleged to have assumed the risk of injury resulting from Pyle's intoxication. Alternatively, plaintiff is charged with contributory negligence in voluntarily entering, and riding in, and continuing to ride in, a motor vehicle with the driver known by him to be under the influence of intoxicants.
The issues presented for determination by the trial court related to the question of defendant's liability, as well as an award of damages for the injuries sustained by plaintiff. Trial was had before a jury. The question of liability was resolved adversely to defendant and plaintiff was awarded $1,460.55, an amount identical with the sum expended by plaintiff for medical treatment. From the judgment, defendant appealed. Plaintiff has answered the appeal praying for an increase of the award to $5,000, the limit of defendant's contractual liability.
Neither plaintiff nor defendant's assured remembered or recalled how the accident occurred or why the driver lost control of the car. There were no other witnesses to the accident. There is no evidence in the record to show why the accident occurred. The evidence does establish, however, and, in fact, defendant admits, that Pyle was the owner and driver of the Chevrolet automobile at the time of the accident.
The circumstances surrounding the occurrence of the accident warrant the application of the doctrine of res ipsa loquitur because (1) neither plaintiff nor defendant's assured, due to a loss of memory, or a period of retrograde amnesia, attributable, by the medical experts, to the injuries received by them in the accident, is chargeable with actual knowledge as to the cause of the accident, and (2) defendant's automobile, of which he was the driver, was the offending instrumentality. Obviously, the accident is not such as usually, or ordinarily, occurs in the absence of negligence.
The doctrine of res ipsa loquitur is that when a thing which causes injury without fault of the injured person is shown to be under the exclusive control of a defendant and the injury is such as in the ordinary course of events does not occur, if the one having control uses proper care, then the injury is presumed to have arisen from the defendant's want of care. Saunders v. Walker, 229 La. 426, 86 So.2d 89; Loprestie v. Roy Motors, Inc., et al., 191 La. 239, 185 So. 11; Lykiardopoulo v. New Orleans & C R Light & Power Co., 127 La. 309, 53 So. 575; Shields v. United Gas Pipe Line Company, La.App., 110 So.2d 881. The doctrine is a rule of evidence peculiar to the law of negligence and is an exception to, or qualification of, the rule that negligence is not to be presumed, but must be affirmatively established. Plunkett et ux. v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437; Gerald et ux. v. Standard Oil Co. of Louisiana et al., 204 La. 690, 16 So.2d 233. The burden is thus cast upon the defendant to explain the cause of the accident, if he desires to escape the inference of fault, as the accident itself makes a prima facie case of negligence against him. Gerald v. Standard Oil Co. of Louisiana, supra; Jones v. Shell Petroleum Corporation et al., 185 La. 1067, 171 So. 447; 65 C.J.S. Negligence § 220 (2), p. 987. The applicability of this doctrine had been recognized in actions by injured passengers against the drivers of vehicles which were involved in accidents for unknown or unexplained causes. Larkin et al. v. State Farm Mutual Automobile Ins. Co., La.App., 91 So.2d 94; Bourg v. *256 Aetna Casualty & Surety Company, La. App., 77 So.2d 131; Fetterly v. McNeely et al., La.App., 77 So.2d 757; Pearce v. United States Fidelity & Guaranty Co., La. App., 8 So.2d 743; Harrelson v. McCook et al., La.App., 198 So. 532; Galbraith v. Dreyfus et al., La.App., 162 So. 246; Gomer v. Anding et al., La.App., 146 So. 704; Monkhouse v. Johns, La.App., 142 So. 347.
The facts and circumstances of the instant case, in our opinion, warrant and justify the invocation of the doctrine of res ipsa loquitur, as the plaintiff, a guest passenger in the defendant's assured's automobile, had no knowledge as to the cause of the accident. The evidence warrants the further conclusion that the doctrine is applicable to the facts of the case as defendant has not rebutted, or attempted to rebut, the presumption, or inference, of negligence attributable to its assured. Hence, it must be accepted that the assured was guilty of negligence constituting a proximate cause of the accident.
The question of liability further presents, for determination, the question as to whether or not defendant's assured was, at the time of the accident, under the influence of intoxicants and, if so, whether plaintiff knew, or should have known, of that condition.
The record discloses that Pyle was host to a dozen or more friends at a party in a local hotel during the Christmas holiday season on the night of December 27, 1958. Pyle arrived at the hotel about 8:00 o'clock for the last-minute preparations to assure his guests of an evening of pleasure. That intoxicating drinks would be served was apparently well understood and, with only one exception, probably all, to some extent, imbibed. Plaintiff, accompanied by Steve Lee Stephens and William S. Webb, arrived late at the party, and was in Pyle's presence only a short time before Pyle left to return his date home who, as a nurse, was on call for duty at 12:00 midnight. During this interval that plaintiff, Stephens, Webb, and Pyle were together, neither of these parties saw Pyle drinking. Pyle returned to the hotel about 12:30 or 1:00 a. m. and, during the next interval of 30 minutes or longer that they were together, Dowden did not observe Pyle drinking intoxicants. However, during the course of the evening, Dowden was in Pyle's presence only for short periods of time.
From the hotel, an excursion was made to the Shreve Landing Club by members of the party, including Dowden and Pyle, who then returned to the hotel. Then followed a journey to KCS Restaurant, from which the party returned to the hotel where breakfast was ordered in the grill. Pyle produced a bottle of liquor but, being informed liquor was prohibited in the dining room, he decided to go to Bossier to eat, and was accompanied by plaintiff on that trip. The accident happened on the return journey.
Dowden testified he observed no drinking by Pyle, who, to him, appeared normal; nothing out of the ordinary was noticed and no reason for Dowden to believe that Pyle was drunk or under the influence of intoxicating liquor was indicated.
William H. Womack, night auditor at the hotel, testified that he saw Pyle immediately before Pyle and Dowden left for Bossier and cashed a personal check for Pyle, but did not observe, from Pyle's actions, that he was under the influence of intoxicating liquor. However, Guy J. Stephens, assistant manager of the hotel, stated that about 1:15 Pyle's tongue seemed to be a little heavy.
Dowden maintained that, notwithstanding the drinks consumed by him, he was sober and in full possession of his faculties at all times.
The five police officers who went to the scene of the accident found no evidence that drinking was involved, such as whiskey bottles, glasses, or beer cans. Nor did they sense alcohol on the breath of either Dowden or Pyle.
Miss Fincher, Pyle's date, testified he did not drink before reaching the party, *257 although thereafter he drank one drink right after another. While she procured his car keys, she explained she did so, not because of his drinking or intoxication, but, as an assurance of her departure in time to reach home by midnight when, as stated, she was on call at the hospital.
Drs. Ford J. MacPherson and A. A. Bullock, Jr., who attended and treated both Pyle and Dowden on their admission to the hospital immediately following the wreck, made no notation on their records that either of these parties was intoxicated. Nor did they have any independent recollection of such condition. Due to their close proximity to these parties while they were undergoing surgery and other treatment, the doctors were in position to and it appears reasonable they would have observed their intoxication if such condition had existed.
From the testimony of Harry Lewis and Charles H. Lewis, it would appear their opinions were that Pyle was under the influence of intoxicating liquor. Nevertheless, Harry Lewis testified Pyle appeared to be handling himself fairly well, and the reason he did not go to Bossier with Pyle was that he had already ordered a meal in the hotel grill.
Pyle testified at the time he left the hotel grill, he was in full possession of his mental and physical faculties. His statement, first made to an insurance agent, was to the effect that he was not under the influence of intoxicating liquor at the time of, nor immediately preceding, the accident, but there was a change in his opinion following receipt of information an action had been instituted for an amount exceeding the policy limits of his insurance. Thereafter, he claimed to have been drunk.
The testimony is obviously very conflicting. Two factors are worthy of mention. One is that Dowden was not in the presence of Pyle except for a short period of time prior to 1:30 a. m. The extent of Pyle's drinking thereafter is not disclosed by the evidence. Secondly, if Pyle had drunk to excess during the earlier part of the evening, the evidence is inconclusive that any former state of insobriety continued until the occurrence of the accident.
From this the all-important factor appears as to whether defendant has sustained its burden of proof and shown, by a preponderance of the evidence, that plaintiff was negligent in his assumption of risk or was contributorily negligent in riding with Pyle. The testimony is inconclusive as to Pyle's intoxication at the time of the accident, and it is equally inconclusive that Dowden knew, or had reason, or grounds, to know, that Pyle was intoxicated to such a degree that his mental and physical faculties were impaired. The defense is not supported by a reasonable preponderance of the evidence.
Nor do we find applicable Woods v. King et al., La.App., 115 So.2d 232, and the authorities therein quoted, upon which defendant in the instant case relies. In the Woods case, it was pointed out that, at the time of the accident the defendant was not in possession of her normal mental and physical faculties and that plaintiff, her drinking companion of the evening, knew, or should have known, of that condition. Nor was it established here, as it was there, that the investigating officers found the driver was heavily under the influence of liquor. In the cited case, there was no apparent reason assigned, or that could be assigned, for the accident other than the driver's intoxication. That is not the situation here. Other possible causes are plausible, such as failure to maintain a proper lookout or excessive speed in negotiating a dangerous curve with vision obscured by fog.
Finally, for consideration, is the quantum of an award to compensate plaintiff for his injuries. No contention is made of the fact that plaintiff sustained serious and painful injuries. He was admitted to the hospital at 4:15 a.m. and was soon thereafter seen by, and admitted to the care of, Dr. A. A. Bullock, who testified that plaintiff's injuries consisted of the fracture of *258 the right humerus and an intra-abdominal injury, later identified as a laceration of the liver. Plaintiff further suffered a cerebral concussion, multiple abrasions, and contusions. His condition was critical and, after having been observed for four hours, an exploratory laparotomy was performed. An examination of the interior of the abdomen revealed a 3-inch laceration on the right side of the liver and an intussusception of the small intestine. This operation was performed by Dr. Bullock, following which, and while under anesthesia, Dr. Ford J. MacPherson, an orthopedist, set plaintiff's right arm, which had been broken in three pieces, a segment of which had been "blown out" as the bone broke. The fracture was reduced by the use of a heavy steel plate and four screws through the bone. The arm was set in a plaster splint.
Plaintiff's pain was described as severe and excruciating and he became irrational, difficult to control, and due to violence, tore loose one of the screws. The administration of sedatives was extremely difficult. To relieve pain induced by the abdominal injury, narcotics should have been given to reduce the pain to a minimum, but this was inadvisable due to plaintiff's concussion of the brain. Hence, sedation was kept at a minimum, with the result of plaintiff's continued suffering of unusual pain.
Dr. Bullock further testified that, before surgery, plaintiff lost his memory for recent events. Dr. Heinz K. Faludi, a neurosurgeon, was called for consultation, who stated that it was quite common, after one suffered a cerebral concussion, that he could not remember the accident itself or the events immediately preceding it, and the period of lapse of memory was designated as a period of retrograde amnesia. On examination, Dr. Faludi found plaintiff's head swollen, particularly over the right temple and the right side of his face, and that he suffered a contusion of the brain indicative of a cerebral edema, or swelling of the brain.
The maximum contractual limit of defendant's liability makes it unnecessary to determine precisely, or with any degree of exactitude, an award adequate to compensate plaintiff for the injuries, pain and suffering sustained and undergone by him as a result of the accident. Sufficient is that such a determination would exceed the defendant's liability under the policy covering the automobile involved.
Hence, the judgment is amended by increasing the award to $5,000 and, thus, as amended, the judgment appealed is affirmed at defendant-appellant's cost.
Amended and affirmed.

On Rehearing
GLADNEY, Judge.
In our original opinion we held the appellant had failed to sustain its burden of proof through showing by a preponderance of the evidence that Dowden was negligent in his assumption of risk or was contributorily negligent in riding with Pyle. The ruling was predicated on finding: first, that the testimony was inconclusive as to Pyle's intoxication at the time of the accident; and, second, that it was equally inconclusive that Dowden knew, or had reason or grounds to know, that Pyle was intoxicated to such a degree that his mental and physical faculties were impaired. We have granted this rehearing for the purpose of reviewing the correctness of our resolutions of those factual issues.
We shall not attempt therein to relate in detail all of the circumstances reported in the transcript of testimony having relevancy upon the points under consideration, nor to categorically respond to the contentions of counsel that our former opinion contains some inexact factual statements, but we prefer to direct our consideration to the more important circumstances affecting the issue of liability.
*259 As related in our original decree, Pyle was host at a party during the Christmas holiday season on the night of December 27, 1958. Pyle's date for the evening, or at least until near midnight when Pyle took her home, testified that during the evening Pyle had a glass in his hand constantly and had reached a condition in which he was "kind of staggery and his eyes were bloodshot and he couldn't talk too plain." Upon returning to the hotel about 1:30 A. M. where the party was still in full swing, Pyle, in response to a message, telephoned Guy J. Stephens, the assistant manager of the hotel who was displeased because of something being thrown from the hotel window. During the telephone conversation Stephens directed that the party break up. Thereafter, some of the guests left, carrying drinks in their hands. Stephens said Pyle's "tongue seemed a little heavy". About thirty minutes later, during which time Dowden remained in the room with Pyle, Pyle and Dowden, accompanied by Kirby Rowe, Harry Lewis, Steve Lee Stephens and William Webb, left in Rowe's car for the Shreve Landing Club. After remaining at the club for some time they returned to the hotel where Rowe left the party. Those remaining transferred to Steve Stephens' car and they motored to the K. C. S. Restaurant where they parked the vehicle and went into the restaurant. They did not remain there very long and drove back to the hotel grill. It was probably after 3:00 o'clock A. M. when this occurred. Pyle left the company and returned with a drink, only to become involved in an argument with one of the grill employees. As a result of this unpleasantness he and Dowden left the grill and, after searching for and finding Pyle's automobile, drove to Bossier City where the accident occurred about 4:00 o'clock A. M.
Harry and Charles Lewis testified that Pyle was intoxicated. Harry Lewis was one of Pyle's companions in the grill shortly before the accident. It was his opinion that Pyle was under the influence of intoxicants at that time. Pyle, himself, gave the following testimony:
"Q. When you got in that car to leave the Captain Shreve Hotel, the grill, were you sober or were you drunk? A. I would say I was drunk, sir.
"Q. Were you in full possession of your mental and physical faculties or not? A. I would say I thought I was."
Two of the police officers who arrived at the scene immediately after the accident testified that they detected the odor of alcohol on the breaths of Pyle and Dowden.
The inescapable inference from the record is that Pyle was under the influence of intoxicating liquor and gave that impression to others. We are impelled likewise to the conclusion that the accident resulted from the failure of the driver to maintain proper control over the vehicle. Such absence of control under the circumstances presented can only be attributed to the inebriated condition of Pyle.
The question most seriously argued, however, is whether the plaintiff, a drinking companion of the driver during several hours preceding the accident, knew or should have known that the driver was not in possession of his normal mental and physical faculties.
The courts have repeatedly recognized that in order to prove that one is incapable of operating a motor vehicle, it need not be shown that he was drunk, but only that he had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties and cause such faculties to be materially impaired; and that whenever a guest companion who knew or should have known that the driver was under the influence of drink, voluntarily rode with him in such condition, the right of the guest to claim damages is barred. Elba v. Thomas et al., La.App.Orleans 1952, 59 So.2d 732; Futrell v. Pacific Indemnity Company, La. *260 App.Orleans 1955, 79 So.2d 903; Woods v. King, La.App. 2 Cir., 1959, 115 So.2d 232; Lightell v. Tranchina, La.App.Orleans 1959, 115 So.2d 890; Lyell v. United States Fidelity & Guaranty Company, La.App.Orleans 1960, 117 So.2d 290; McAllister v. Travelers Insurance Company, La.App. 1 Cir., 1960, 121 So.2d 283.
It was said in Elba v. Thomas et al.:
"This court does not hold as a matter of law that one who has had a drink or two just before driving an automobile must necessarily be guilty of negligence if he should have an accident. Nor does this Court attempt to hold that it takes one, two, three or more drinks to render a person incapable of safely driving an automobile, as liquor has more or less effect upon individuals according to various conditions, such as age, six, physical condition and its accustomed use.
"This Court can take judicial notice of what is common knowledge and human experience. Anyone who has indulged in alcoholic beverages knows that it dulls perception and reflexes to the extent that one cannot react normally to impending emergencies and dangers.
"This Court does hold, however, that when one has attended a party from 8:00 p. m. to 2:30 a. m., where liquor was served freely and it is admitted that he had at least three or four drinks; where he is too dazed to know where the accident happened; that he failed to take the stand and explain testimony that he was glassy-eyed and staggering as though drunk, and was travelling excessively and headlights not burning, the conclusion is inescapable that he was intoxicated at the time and that his intoxication was one of the contributing factors to the accident." 59 So.2d at pages 735-736.
The evidence reveals that Dowden was in the presence of Pyle almost constantly for two and one-half hours preceding the accident. During this period Pyle was intoxicated. It is our holding that plaintiff having had such an opportunity for observation realized the inebriated condition of Pyle, and, therefore, voluntarily assumed a known risk and danger by entering the automobile driven by Pyle. It is true that counsel for appellee attacks the credibility of Pyle, who had previously made an inconsistent statement, but we are inclined to accept Pyle's explanation in that the former statement was made for certain reasons when he was not under oath, whereas he was under oath when he later testified in court as to his condition.
Accordingly, our original decree is recalled and set aside. It is ordered that the judgment from which appealed be annulled, reversed and set aside, and the demands of plaintiff be rejected at his cost.