This is a suit in which plaintiff claims damages for personal injuries suffered in an automobile accident alleged to have resulted from the negligent driving of a feebleminded person who was under the care, custody and control of the defendant, Jack McCrocklin, and who at the time was operating an automobile owned by the said defendant. Defendant's automobile liability insurer, American Mutual Liability Insurance Company, is made a party defendant.
After trial on the merits there was judgment in favor of defendants rejecting plaintiff's demands, from which judgment plaintiff has appealed.
Under the terms of a "work parole agreement" dated February 16, 1945 one Paul Guidry, an inmate of the Louisiana State Colony and Training School, was released from said Colony to the employ of the defendant, McCrocklin. The said Guidry, who, at the time of the occurrence of the accident which is the basis of this suit, was about 21 years of age, was classified, upon the basis of psychological, psychiatric and psychometric examinations, as a high grade moron deficient in mental performance but above the average in aptitude in manual skills. There is no showing of any criminal tendency nor of any behavior problem of any serious extent.
Under the provisions of the agreement between the colony, represented by its superintendent, and the defendant, McCrocklin, designated in the agreement as the employer, to which instrument Guidry was a consenting party, the said defendant agreed to furnish room, board, laundry and to pay Guidry the sum of $20 per month for his services as general helper. We do not find it necessary to set forth in detail the provisions of the agreement, because of the fact that it is obvious from an examination of the instrument that the relationship between McCrocklin and Guidry was that of employer and employee. The instrument is designated as a work parole agreement under which Guidry was released for the specific purpose of permitting him to work for the defendant. The instrument further recognizes the continuation of the relationship between Guidry and the Colony as being that of ward and institution. There is not the slightest evidence of the fact that McCrocklin ever assumed, by legal proceedings or otherwise, any responsibility which would have placed him in the position of curator or tutor of Guidry.
The facts developed on trial of this case show that in November of 1945 defendant and his wife made a trip to the State of Missouri, leaving one of defendant's cars, a Chrysler automobile, in the garage with the ignition switch locked. The keys to the switch were left in a drawer of a desk in a bedroom of defendant's home. During his absence defendant left his premises in charge of his colored cook, whose duties were not only to look after the care thereof, but to furnish Guidry's meals.
The testimony shows that on several occasions during defendant's absence, Guidry, who had located and removed the keys to the automobile ignition switch from the desk drawer, drove and used defendant's car, and on each of these occasions he was accompanied, during most of the time he was using the car, by plaintiff, who was A. W.O.L. from his duty with the Army by reason of having overstayed the period of a furlough.
The accident which caused plaintiff's injuries occurred about 1:30 p.m. on Saturday, the 17th of November, 1945. On the Thursday immediately preceding said date plaintiff and Guidry had been together and had ridden in the automobile. On Friday night plaintiff and Guidry, accompanied by six other young men and women, had made a trip in the car from Mansfield to Bossier City for the purpose of witnessing a football game. Some time during this adventure plaintiff and Guidry made plans to *Page 621 
meet early in the afternoon of the next day for the purpose of "dating" two of the young women who had been with them on the Friday night party and who lived near Logansport in De Soto Parish, some miles distant from Mansfield. This meeting between plaintiff and Guidry took place as arranged, and, a few miles out of Mansfield, the car, which was being driven by Guidry, overturned by reason of Guidry's negligent and reckless driving, particularly in attempting to negotiate a curve of the highway at an excessive rate of speed, testified to by plaintiff as being in the neighborhood of 102 miles per hour. Plaintiff sustained serious, painful and permanent injuries as the result of the accident.
[1] It is argued on behalf of plaintiff that the liability of the defendant, McCrocklin, is determined by the law of tort, as set forth in Articles 2315 — 2320, inclusive, of the Civil Code. This contention is in the nature of a shotgun charge that appears to cover every possible basis upon which defendant's liability might be predicated, but we do not find that any of the articles referred to would support action fixing liability upon the defendant under the particular circumstances of this case.
Most of the points embodied in these codal provisions may be briefly disposed of.
The responsibility for damage occasioned by the acts of persons within the custody of another, as generally set forth in Article 2318, which deals with the responsibility of parents and tutors of minor children; 2319, with regard to the liability of curators of insane persons; and Article 2320, providing, among other matters, for the responsibility of a master or employer for damage occasioned by their servants (employees).
There is no evidence in the instant case which would substantiate a finding of any relationship as between parents or tutors and minor children, nor of curators and insane persons.
And, the provisions of Article 2320 apply the liability of masters and employers for damages occasioned by their servants and overseers to occasions arising from "the exercise of the functions in which they are employed". Further bearing upon this point the article further declares that responsibility only attaches "when the masters or employers * * * might have prevented the act which caused the damage * * *."
In our opinion there is nothing in this case which would impose liability upon the defendant, McCrocklin, under any of the relationships noted.
[2] In Section 315 of the Restatement of the Law of Torts we find a statement of the general principle, in which statement we heartily concur and which we find particularly appropriate to the facts developed on trial of this cause, as follows:
"There is no duty so to control the conduct of a third person as to prevent him from causing bodily harm to another unless,
"(a). A special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct * * *."
No special relationship having been established in the instant case, it is obvious that no duty or responsibility of a nature which would have rendered the defendant, McCrocklin, liable could possibly arise.
But able counsel for plaintiff strenuously urge the applicability of Article 2316, providing that: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
[3] Under this provision it is argued that the defendant, McCrocklin, was negligent and imprudent because, knowing the deficient mental status of Guidry, he, nevertheless, failed to provide proper and adequate supervision, custody and control of the said Guidry during his own absence. And, further, it is urged that he was negligent and imprudent in leaving his automobile and the keys thereto where Guidry could have access to them.
Under the facts adduced we do not find that this position of plaintiff is well founded. So far as McCrocklin knew, Guidry could not operate an automobile. There is no negligence in a man leaving his locked automobile in his own garage and the keys in the drawer of his private desk in his personal bedroom in his own home. *Page 622 
[4] We think the principle is well stated in Section 308 of the Restatement of the Law of Torts as follows: "It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."
There is not the slightest showing in the record which would lead to a conclusion that the defendant, McCrocklin, had the slightest intimation that Guidry intended or was likely to use the automobile which had been left locked in defendant's garage.
To our minds the failure of plaintiff to establish any legal basis for the liability of defendant, McCrocklin, is so plain as to render unnecessary as mere surplusage a detailed discussion of the additional defense of assumption of risk.
[5] On this point we comment briefly simply to extent of noting that plaintiff's own testimony is more than ample to establish, without possibility of refutation, the fact that plaintiff and Guidry were at the time of the accident engaged in a joint venture, and, further, that Guidry's inability to safely operate an automobile was so well known to plaintiff as to convict him of the grossest negligence in submitting himself to the dangers attendant upon the engagement of riding as a passenger in a car driven by Guidry.
For the reasons assigned, the judgment appealed from is affirmed at plaintiff's cost.