JANVIER, Judge.
This litigation originated as a suit by a guest passenger in an automobile against the owner and driver of that car and also against the owner and operator of another car and the liability insurance carrier of the said operator of the other car. The *891 suit, insofar as it was at first against the operator of the car in which plaintiff was a guest passenger, was dismissed by plaintiffs and there remains only the question of liability vel non of the operator of the second car and his insurer.
The plaintiff, Mrs. Katherine Lightell, wife of Harold Lightell, together with two other women, was in a third car owned and operated by Charles Luc when that car, as a result of high speed, failed to negotiate a curve in the road and crashed into another car which was standing near the side of the road. Immediately after that crash a Cadillac car, owned and operated by Vincent Tranchina, which had been following the Luc car, also left the road at the curve since its speed, like that of the Luc car, was so excessive that Tranchina could not follow the curve.
Mrs. Lightell and her husband, Harold Lightell, brought this suit for damages against Luc, the driver of the car in which she was a passenger, and also against Tranchina and his liability insurer, Audubon Insurance Company. They prayed for solidary judgment against the three defendants, Mr. Lightell seeking recovery of $208.45, which he alleged to be the cost of medical care, etc., required by Mrs. Light-ell, and she praying for judgment in the sum of $16,850 as reimbursement for her pain and suffering, future pain and suffering and loss of earnings for 49 weeks.
It should be stated here that during the trial the Judge a quo directed attention to the fact that the claim of the earnings of the wife should have been made by the husband and not by the wife, and that accordingly the husband now asks that he be allowed to recover on that item of damage since, although he did not pray for it, he did pray for “all general and equitable relief.”
In one other suit which is not before us Service Fire Insurance Company of New York, which had issued a policy of collision insurance to Charles Luc and had paid Luc for the damage sustained by his car and had secured subrogation from the said Charles Luc, sought to recover from Vincent Tranchina and his insurer the amount which it had paid to Luc. Though the record does not definitely show it, that suit seems to have been consolidated for purposes of trial only with the suit now under consideration by us.
The plaintiffs, Mr. and Mrs. Lightell, allege that the injuries which Mrs. Lightell sustained resulted from negligence of Luc, the driver of the car in which she was a passenger and from the negligence of Vincent Tranchina in that the said Tranchina, who had been operating his Cadillac directly behind the Ford driven by Luc, struck the Luc vehicle from the rear “several times” and finally struck it so hard that the Luc vehicle was driven off the roadway and that plaintiff, “Katherine Lightell, was thrown from the said Luc vehicle and suffered injury * * *”.
Luc denied any negligence on his part and Tranchina and Audubon Insurance Company also denied that Tranchina had been in any way at fault. Tranchina and Audubon Insurance Company averred that if there was any negligence on the part of Tranchina, Mrs. Lightell had been guilty of contributory negligence in engaging in a drinking party with Luc and others and in riding with him, knowing that he was in a condition which made it impossible for him to properly operate his car. They further contend that Mrs. Lightell was negligent in permitting Luc to operate his car at such a tremendously excessive speed that he could not control it.
In the Civil District Court for the Parish of Orleans there was judgment against Tranchina and Audubon Insurance Company and in favor of plaintiff, Mrs. Katherine Lightell, in the sum of $2,500, and also in favor of Harold Lightell, in the sum of $208.45. Both have appealed. Mr. and Mrs. Lightell have answered the appeal, she praying that the amount awarded her be increased, and he praying that the *892 amount awarded him be increased so as to include the item of $2,850 representing loss of earnings of his wife.
At sometime, probably about 12:25 o’clock in the early morning of January 20, 1956, Mrs. Katherine Lightell, together with Audrey Creppel, went with Charles Luc in his Ford automobile to an establishment on or near the Chef Menteur Highway known as Sal’s Lounge. Charles Luc referred to himself as a “car hop” in an establishment known as The Rockery Inn.
While these two women, with Luc, were in Sal’s Lounge, Vincent Tranchina, in his Cadillac, arrived with a third woman, Cynthia Guillot. These five, the two men and the three women, spent the next 30 or 40 minutes or so in drinking beer and dancing. At sometime during that period Tranchina and Cynthia Guillot engaged in an argument and shortly thereafter all of the parties left the establishment, the three women with Luc in his Ford and Tran-china alone in his Cadillac.
There is considerable uncertainty over the question of whether Tranchina left first, or whether Luc and the three women were the first to depart. In fact, there is a great deal of uncertainty over all of the facts of the case. The District Judge in the judgment itself said: “ * * * I find it impossible to believe in toto the testimony of any of the participants in the accident.”
It is certain, however, that all the parties left in the two cars and that Tranchina was alone ;n his. Shortly thereafter both cars were proceeding along what is known as the Burma Road, a few miles from Sal’s Lounge. Just what occurred on that road we cannot possibly determine from the record for the reason that all of the parties very obviously engaged in a general lying contest. Those in the Luc car state that Tranchina was following their car and bumping it from the rear, and there is some evidence to the effect that from his position in the rear he threw something at the third car which he was following. At other points of the testimony of these witnesses, it is said that Tranchina dashed by the Luc Ford and passed it on the right which Mrs. Lightell says was the proper side. These witnesses also stated that Tranchina passed them two or three times, dashed ahead of them and turned around and came back, placed his car behind their car, and kept bumping into it from that position. At other points in their testimony they make no references to the charge that he went ahead of them several times and turned back to bump them from the rear. Tran-china says that he did not bump the Luc Ford at all; that as he attempted to pass it someone from that car threw a glass at him and that then Luc dashed ahead of him in his car at tremendous speed probably about 80 miles an hour and that he, Tranchina, in an effort to discover why something had been thrown at him, accelerated his car and followed the Luc car, both at very high speed, until the Luc car, at the curve, left the road and crashed into the third stationary car, being followed immediately by the Tranchina car which crashed into the Luc car.
There was much to indicate that all of the persons involved had imbibed too freely of liquor and that the general circumstances indicated that they were engaged in a joint convivial venture to such an extent that the negligence of any one of them might possibly be imputed to all.
Luc was married and his wife was not with him. Mr. and Mrs. Lightell had been married about two weeks and Lightell, a seaman, was not with them, being on a voyage at sea. There is little agreement among the various witnesses as to just what took place. However, the record itself does no more than suggest the assumption that they were engaged in a drinking party and that Luc was intoxicated. We cannot reach conclusions based merely on assumptions.
While we find in the record no reason for the rather unusual conduct of both drivers, it seems more probable that Tranchina would have caused the trouble *893 than that Luc would have done so. One thing is not disputed; though Tranchina had arrived at the drinking establishment with Cynthia Guillot, they had had a disagreement and she had left with Luc. Therefore it is more probable that Tran-china, apparently being incensed, would have caused the trouble rather than Luc, who had left with all of the women.
As to the charge that Mrs. Lightell was negligent in permitting Luc to drive the car at so high a rate of speed, the only evidence that we have is that she attempted to persuade him to reduce the speed. We do not know what more she could have done.
As to the charge that Luc was so intoxicated that she should not have gotten into the car with him, we find that though probably he had imbibed freely, the record does not indicate that he had had more than “two or three beers.” We have not overlooked the fact that when Mrs. Light-ell reached the hospital she no doubt was intoxicated to some extent, for the hospital report shows that, while she was not unconscious, she was “odoriferous of alcohol and vomiting.” This fact cannot bar recovery by her if the record otherwise justifies it.
When we come to consider the extent of the injuries of Mrs. Lightell we find that she sustained a fracture of the “superior ramus of the right pubic bone,” and was required to wear a cast for at least twenty-seven days and that she remained under medical treatment for about ten months. She was taken to The Charity Hospital and remained there seven days. Under the circumstances the award of $2,500 to her seems to be adequate, though not excessive.
The contention that Lightell should not be permitted to recover the charges made by The Charity Hospital is, we think, not well founded. It is true that under LSA-R.S. 46:8 The Charity Hospital is subrogated to the right of Lightell, and it is also true that the Charity Hospital did not intervene and claim the amount of its charges.
Counsel for defendant point to these facts and direct attention to the decision of the Supreme Court in Peart v. Rykoski, Inc., 195 La. 931, 197 So. 605, 607, in which it was held that The Charity Hospital could not recover for such charges since its claim had prescribed. However, the Court directed attention to the fact that there the plaintiff “did not make any demand or claim for medical expenses and hospitalization nor state that he or the defendants were liable to the Charity Hospital at New Orleans therefor.” Mr. and Mrs. Lightell, however, in their petition did allege that the charges of the Charity Hospital had amounted to $208.45 and Lightell alleged that he had become “obligated to pay to Charity Hospital the sum of $208.45 for their services rendered to his wife * We think that this allegation distinguishes this case from Peart v. Rykoski, Inc., supra, and that, since, if Lightell is financially able to pay the Charity Hospital, he is liable to that institution for the cost of its services and should be permitted to recover those costs.
The contention of the plaintiff, Lightell, that he should be permitted to recover for the earnings of which his wife was deprived as the result of her injuries is very interesting, but we need not reach a decision on that contention. It should be noted that the claim for these services was made by the wife and that the District Judge directed attention to the fact that the claim should have been made by the husband. The plaintiffs maintain that, though Mr. Lightell did not make claim for this loss, he did pray for “all general and equitable relief,” and that therefore he should be permitted to recover on this item of damage.
Our answer is that the proof as to this loss is so uncertain and indefinite that we cannot tell whether there has actually been such a loss and if so, what it amounted to.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.
*894 Before JANVIER and McBRIDE, JJ., and ALEXANDER E. RAINOLD, Judge ad hoc.