FRUGÉ, Judge.
Defendant American Universal Insurance Company issued its standard automobile public liability insurance policy to Dal-win C. Leggett insuring a 1952 Plymouth four-door sedan automobile against personal injury within limits of the maximum of $5,000 for any one person.
On November 30, 1959 Mrs. Vadie G. Troquille was injured while riding as a guest passenger in this automobile while it was being driven by Mrs. Leggett. The accident occurred on the Natchitoches-Many Highway some eight or nine miles east of the town of Many, and as admitted by defendant, there is no question but that the accident was caused by the negligence of Mrs. Leggett. This suit was filed by Mrs. Troquille to recover damages because of personal injuries received by her in this accident and she was joined in the suit by her husband, John A. Troquille, who seeks to recover the expenses incurred by the community for the treatment of his wife’s injuries. The defendants are Mrs. Leg-gett, driver of the automobile, and American Universal Insurance Company who had insured it as pointed out hereinabove.
The first contention is that because Mrs. Leggett was an inexperienced, incompetent and inefficient unlicensed driver of this automobile, all of which was well known to Mrs. Vadie G. Troquille, that she assumed whatever risk there might have been in connection with her riding in this automobile while it was being driven by Mrs. Leggett, and secondly that even though Mrs. Leggett herself was guilty of negligence in connection with the accident which negligence is admitted, that nevertheless, Mrs. Troquille was guilty of such independent acts of contributory negligence as to 'bar her of recovery because she was riding with a driver she well knew had no driver’s license, had failed in her effort to secure a driver’s license, and who she well knew was an inefficient and incompetent driver.
The testimony of Mrs. Troquille revealed that she lived next door to Mrs. Leggett; that she knew Mrs. Leggett did not have a driver’s license; that she knew that Mrs. Leggett had taken an examination for a driver’s license and had failed; that Mrs. Leggett wanted to go to Many, Louisiana to take a test for a driver’s license; that she, Mrs. Troquille, knew that Mrs. Leg-gett had failed her test on a hill in the City of Natchitoches and had stalled her car and that she could not get it started; that she, Mrs. Troquille, had attempted for a few weeks to teach her, Mrs. Leggett, to drive and had taken her out for that purpose on the road on various occasions; that she had taken her out near the airport and out on the field and that she would attempt to teach her how to drive, but that, with all that, Mrs. Leggett had trouble backing up the car.
It is well to note that Mrs.' Leggett corroborated the above partly. Mrs. Leggett testified that Mrs. Troquille knew that she *592 (Mrs. Leggett) could not drive an automobile; knew that she (Mrs. Leggett) had no driver’s license; knew that she (Mrs. Leggett) had failed in her attempt to secure a driver’s license, and knew that she (Mrs. Leggett) had been warned by the Chief of Police of the City of Natchitoches not to drive the automobile on the streets within the city of Natchitoches. However, counsel for plaintiff strongly urges a different version of the facts in that he takes the position that his client had no alternative but to give up the wheel or get out of the car at the Spanish Trail Rest where they stopped for gas five miles out of Natchitoches. He points out the dilemma that Mrs. Troquille was placed in when she was forced to either ride with an unlicensed and incompetent driver at the wheel or abandon the automobile some five or six miles from home without any apparent method of transportation or communication available to provide her a way back to her home.
Defendant seems to have adequately refuted this interpretation of the testimony in pointing out that the general store and filling station known as Spanish Trail Rest where they stopped for gas is four or five miles from the corporate limits of the City of Natchitoches on a heavily traveled highway, and at an intersection between this road and a less traveled road, with neighbors living all around the store and with a telephone within eight or ten paces from the pump from which the gasoline was delivered to the Leggett automobile, and that in effect Mrs. Troquille indeed had no problem in that she could easily have gotten out of the car to use the telephone to call her husband or some friend to come get her.
We have summarized the facts before discussing the law and will now see what the trial judge had to say, which is as follows :
“Plaintiff was injured while riding in a car owned and driven by a Mrs. Annie Mae Leggett. The evidence showed that Mrs. Leggett was an incompetent driver, with no drivers license, all within the knowledg'e of Mrs. Tro-quille. Further that Mrs. Troquille had been giving her lessons in driving off of highways, and at the time of the accident, they were on their way to Many in order for Mrs. Leggett to take a driving test there, after having failed it in Natchitoches. Thus Mrs. Troquille was well aware of the shortcomings of Mrs. Leggett as to her driving. Suit was for damages sustained by plaintiff th[r]ough the negligence of Mrs. Leggett in losing control of the car and running into a ditch off of the highway.
“Defendants admit that Mrs. Leggett was negligent but even so contend that plaintiff cannot recover because of her contributory negligence and assumption of risk.
“Under the facts established by the evidence, it is the opinion of this Court that Mrs, Troquille was guilty of contributory negligence in riding with Mrs. Leggett under the circumstances as shown by the evidence well knowing her incompetence as a driver and that by such act on her part she assumed the risk of an accident occurring because of that fact.”
The case of Elba v. Thomas, infra, seems to be controlling here. There it was held that where a wife who was present with her husband during a six hour drinking party and knew of his drinking and rode with husband as guest passenger assumed risk of accident caused by husband’s drinking, notwithstanding that wife was asleep when accident actually happened, and hence recovery by wife against husband’s insurer and other party involved in accident was precluded. Elba v. Thomas, La.App., 59 So.2d 732, syllabus 15. This syllabus reflects what the court said in somewhat a similar situation.
The court held above that even though it was 2:30 o’clock in the morning and even *593 though it was embarrassing for the wife not to accompany her husband home at that hour of the morning, but nevertheless it was her duty to have refused to enter the automobile and to have stayed out, and that when she did enter the automobile with her husband knowing that he had been drinking, she assumed the risk and was likewise guilty of such contributory negligence as to bar her of the right of recovery.
Plaintiff in an effort to sustain his position quotes from Prosser’s Law of Torts in Chapter 9 of his text which reads as follows:
“The defense of assumption of risk rests upon the plaintiff’s consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk. Such consent may be found by implication from the conduct of the parties. When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk and to relieve the defendant' of responsibility. Such implied assumption of risk, ordinarily requires knowledge and appreciation of risk and a vohmtary choice to encounter it.” (Emphasis supplied.)
Counsel for plaintiff then contends that in order for the plaintiff to have assumed the risk of riding with an unlicensed driver, and for her claim for injuries to thus be barred, it must be affirmatively shown by the defendant that plaintiff exercised a voluntary choice to expose herself to or to encounter the risk or danger that caused her injury. He further points out as in the case of all affirmative defenses, that the defendant bears a 'burden of proving, by a preponderance of the evidence, that Mrs. Troquille’s decision to continue on her journey with the defendant, an incompetent driver in control of the vehicle, was a free and voluntary choice of the plaintiff. He accordingly submits that the defendant has failed to do so. We conclude that the trial judge correctly rejected this contention. The testimony of Mrs. Troquille herself shows that there was no reason why she could not have gotten out of the automobile at the Spanish Trail Rest and let Mrs. Leggett go on her way to Many. It is to be observed, however, that she chose to remain in the automobile and from that point on she assumed the risk and became guilty of such independent or contributory negligence as to bar her right of recovery. (Emphasis supplied.)
In the case of Brown v. Waller, La.App. Second Circuit, 8 So.2d 304, a man standing on the side of a road hitched a ride with a truck in which there was no room to be seated in the cab, but on which a tool box had been specially built on top of the cab, this box being seven and one-half feet long, eighteen inches wide and fifteen inches deep. The driver of the truck told the hitchhiker he might sit on top- of this tool box which he proceeded to do, but shortly thereafter was thrown, or fell from his precarious position, was injured, and suit followed. The Court held that when the hitchhiker with the consent of the truck driver, mounted the tool box on top of the cab, because of lack of room inside the cab, he assumed the risks of ordinary travel incident to the operation of the truck and his suit was dismissed. Along this same line is the case of Scott v. McCrocklin, La.App., 29 So.2d 619, wherein the plaintiff had gone for a ride in an automobile owned by Mr. McCrocklin, but which was being driven without his knowledge or consent by a boy named Paul Guidry, a high-grade moron that had been released from the State Colony and Training School to Mr. McCrocklin to be worked as a handy man around the premises, the Court concluded that from the plaintiff’s own testimony, it was amply established, without possibility of refutation that the guest passenger knew that Guidry was a high-grade moron, and of his inability to safely operate an automobile, and that when he submitted himself to the dangers attendant upon the engagement of riding as a passenger in this *594 car, he was guilty of the grossest kind of negligence and his suit was dismissed.
In another case pertinent here it was held that when plaintiff undertook to ride as a guest passenger with a woman in her automobile, knowing that she was drinking, he assumed the risk incident thereto and forfeited his right of recovery. Woods v. King, La.App., 115 So.2d 232.
In Lightell v. Tranchina et al., La.App., 115 So.2d 890, plaintiff was a guest passenger who voluntarily entered an automobile to be driven by a man who, she knew was intoxicated and with whom she had been drinking, and shortly thereafter was injured, but again the court held that she assumed the risk and was guilty of such contributory or independent negligence as to bar her right of recovery.
We find no manifest error on the part of the trial court, and for the above and foregoing reasons its judgment is affirmed at plaintiffs’ cost.
Affirmed.