129 So.2d 269 (1961)
Wilson CONSTANTIN et al., Plaintiffs-Appellees,
v.
BANKERS FIRE AND MARINE INSURANCE COMPANY et al., Defendants-Appellants.
No. 240.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1961.
Rehearing Denied May 9, 1961.
Pugh, Buatt & Pugh, by Lawrence G. Pugh, Jr., Crowley, for defendants-appellants.
Edwards & Edwards, by Edwin W. Edwards, Crowley, for plaintiffs-appellees.
Before TATE, FRUGE and CULPEPPER, JJ.
FRUGÉ, Judge.
This is an action instituted by Mrs. Wilson Constantin for physical injuries which she received in an accident which occurred on March 24, 1960, in the City of Crowley, Louisiana. Her husband joins her in the suit seeking the medical expenses incurred for the treatment of his wife as a result of the accident. Judgment was rendered in favor of plaintiff, Mrs. Constantin, in the sum of $2,000 and in favor of Wilson Constantin, her husband, in the sum of $1,411.50. From this judgment, the defendants have appealed.
*270 The facts reveal that on March 24, 1960, Mrs. Dubois, wife of Adrien Dubois, was learning to drive the Dubois family automobile. She had driven the vehicle on two or three occasions before said date. She desired to secure more practice in order to acquire the necessary experience to obtain a driver's license. Mrs. Wilson Constantin was apparently a good friend of Mrs. Dubois and it was agreed on the date of the accident that Mrs. Constantin would ride with Mrs. Dubois so that she could better learn to operate the automobile. Mrs. Constantin met Mrs. Dubois at her residence and Mrs. Constantin backed the automobile from the garage onto the road and assumed the position on the right hand side of the vehicle. Mrs. Dubois took the wheel and almost immediately and without warning started the automobile, accelerated the gas, and immediately drove it into the ditch and into a culvert throwing Mrs. Constantin against the mirror and, as a result thereof, she received bruises to her hip, arm and injuries to her neck. This suit was instituted by Mr. and Mrs. Constantin against Adrien Dubois, his wife, and his liability insurer, Banker's Fire and Marine Insurance Company.
The facts clearly show that the accident and resulting injuries resulted from the negligent operation of the Dubois vehicle by Mrs. Dubois.
The defendants contend that Mrs. Constantin is barred from recovery because she is guilty of contributory negligence and, alternatively, a second special defense of assumption of risk is raised by the defendants.
We believe as the trial judge did, that Mrs. Constantin cannot be found guilty of contributory negligence. She neither had the time nor the opportunity to do anything at all to prevent the occurrence of the accident. She was sitting in the right hand front seat, expecting the vehicle to go forward in a normal manner and, without warning, it was accelerated and driven abruptly into the ditch in a split second. The defense argues that Mrs. Constantin assumed the obligation to use such care as to prevent the happening of an accident and, accordingly, since she knew that Mrs. Dubois did not know how to drive too well, that she breached a legal duty. However, we can not follow this reasoning for certainly Mrs. Constantin, or any other reasonable person for that matter, could assume that even though a person did not know how to drive, she certainly would not go forward upon the road and immediately run into the ditch. We believe that the testimony reveals that Mrs. Constantin, while she knew that Mrs. Dubois did not have a driver's license, and while she knew that Mrs. Dubois had only driven the vehicle several times, thought that Mrs. Dubois could properly handle the vehicle in keeping it in the roadway. In this respect, Mrs. Constantin testified partially as follows at page 21:
"Q. Do you know whether or not Mrs. Dubois has ever been licensed to operate a motor vehicle? A. No, sir, I don't.
"Q. Do you know whether she can drive a car? A. I was told she could.
"Q. By whom? A. By her, her husband.
"Q. Your husband testified that Mrs. Dubois called him or you and said that she would like for you to accompany her in her car because she did not have enough experience. A. She did.
"Q. Would you consider her a careful driver? A. Sir, I had never ridden with her before.
"Q. How long did the Dubois own a car? A. That I don't know.
"Q. You can't testify to that? A. I can't testify how long they have owned it, no, sir.
"Q. Did you ever ride in a car with Mrs. Dubois before this accident happened? A. No, sir, I did not." *271 She testified further as follows on page 25 of the transcript.
"Q. You mean to say that knowing this lady as long as you did, knowing that you had never seen her drive an automobile, your testimony is that you didn't know whether she was a safe driver or not? A. Sir, I don't know if she was a safe driver or not, that is something I don't know. I had never been in a car with her before; I had never seen her drive."
Further testifying to her belief that Mrs. Dubois could handle the vehicle otherwise she would not have embarked in the car with her, Mrs. Constantin testified as follows on page 26:
"Q. When you got in the car with Mrs. Dubois did you think she could drive the car? A. Yes, sir, Mr. Dubois had said she could.
"Q. Did you expect that she was going to run the car in the ditch? A. No sir; I wouldn't have got in the car if I would have thought that.
"Q. Was it your opinion that she was going to be able to drive the car to the grocery store? A. Yes, sir, it was.
"Q. Did you get in the car for the purpose of driving it for her? A. No, sir, I didn't."
In support of this feeling on the part of Mrs. Constantin that her driver could handle the vehicle, we have the testimony of Mrs. Dubois, herself, who testified that she had previously driven the car with her son and grandson; that she had driven the car around the block and that she had told Mrs. Constantin of her success in handling the vehicle on those occasions. Notice her testimony in that regard beginning on page 36 of the transcript:
"Q. Did you tell Mrs. Constantin that you had been driving with your son and your grandson? A. Yes, she knew.
"Q. She knew about that? A. Yes.
"Q. In other words, she knew you had been driving the car. A. Yes."
Mr. Dubois substantiated this by testifying as follows on page 41.
"Q. Did she know that your wife didn't know how to drive? A. My wife had told her that she had the boys to teach her take a few rounds around the block."
Mr. and Mrs. Constantin both testified emphatically that Mr. Dubois had told them the Mrs. Dubois knew how to drive and not to worry. When asked on examination about this, Mr. Dubois did not deny such a statement but merely stated "I don't remember that". See his testimony on page 42:
"Q. Did you tell Mr. Constantin at that time. `Don't worry, my wife knows how to drive'? A. I don't remember that."
Since both the plaintiffs testified emphatically that such a statement was made and the defendant, Dubois, would not deny it but merely stated he did not remember making the statement, the court should accept the positive, direct, forthright testimony of Mr. and Mrs. Constantin on that point since it is not denied by Mr. Dubois. Positive testimony will outweigh negative testimony and here there is not even a denial of the fact.
Further evidence of Mrs. Dubois' apparent ability to handle the vehicle normally is stated by Mr. Dubois on cross-examination on page 44 of the transcript.
"Q. How soon after you got the Dodge did he start teaching her to drive? A. I couldn't tell * * * a few months afterwards.
"Q. And where did they go when he was teaching her to drive? A. Around the block.
"Q. How many times? A. Three or four times I presume.

*272 "Q. And on that day did everything go good? She drove the car well? A. Yes.
"Q. And about how long after it was after Leewood had taught her that she would drive with Robert? A. I don't know.
"Q. Was it a month? A. About a month.
"Q. If everything went good the first time and she was learning pretty good and she wanted to drive, why did she not go back and drive with Leewood? A. I don't know."
Leewood Dubois, the son of the defendants, testified that his mother had previously driven the vehicle and had done a fair job driving the vehicle and his testimony on that point is shown as follows on page 54 of the transcript.
"Q. The times you and your mother were together in the car, did she keep the car on the road? A. That's right.
"Q. She did what you considered a pretty good job of driving? A. I mean a fair job.
"Q. You all got along pretty good together? A. That's right."
The doctrine of assumption of risk is a special defense and must be specially pled and the burden of establishing such an assumption of risk rests upon the party who alleges it. See White v. State Farm Mutual Automobile Insurance Company, 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338; Upshaw v. Great American Indemnity Company, La.App., 112 So.2d 125.
In 61 C.J.S. Motor Vehicles § 486, page 95, the rule is stated as follows:
"There are three elements of the doctrine of assumption of risk:
"(1) A hazard or danger inconsistent with the safety of the occupant.
"(2) Knowledge or appreciation of the hazard by the occupant.
"(3) Acquiescence or a willingness to proceed in the face of danger."
An examination of the three elements necessary for the application of assumption of risk clearly shows that only the first element might have been present in this case. Mrs. Constantin knew that Mrs. Dubois did not have a driver's license. However, from the evidence adduced at the trial, we do not believe that Mrs. Constantin actually had or appreciated the hazard that she was placing herself in. We are of the opinion that she did not acquiesce to proceed in the face of danger. Immediately upon sitting at the right-hand side of the front seat and before she actually knew of the hazard, Mrs. Dubois ran the automobile in a ditch. Mrs. Constantin had every reason to believe that Mrs. Dubois was able to handle the vehicle with a certain amount of proficiency as the evidence reveals that she had made statements to Mrs. Constantin that she had driven the vehicle while her son was present with her in the vehicle. We do not believe that the hazard or danger was made known to Mrs. Constantin before she entered the vehicle. The evidence reveals, quite to the contrary, that she was of the opinion and belief, based upon positive statements made to her by the defendants, that Mrs. Dubois would be able to handle the vehicle without any trouble. Furthermore, it must be remembered that under the jurisprudence the burden of establishing the existence of the three elements necessary for the doctrine of assumption of risk rests with the party pleading it and the defendant did not carry this burden by a preponderance of the evidence. We believe that the evidence shows that the plaintiffs have proved their case and that the defendants did not, by a preponderance of the evidence, prove the three elements needed for the doctrine of assumption of risk. The trial judge so thought and we do not believe that he committed error.
This court, in the recent case of Troquille et al. v. American Universal Insurance Company et al., 127 So.2d 590, found the doctrine of assumption of risk applicable. *273 In that case, the driver of the automobile, Mrs. Leggett, was an inexperienced unlicensed driver such as is the case at bar. However, the evidence revealed that Mrs. Troquille lived next door to Mrs. Leggett; she knew that Mrs. Leggett did not have a driver's license; she knew that Mrs. Leggett wanted to go to Many, Louisiana to take a test for a driver's license; Mrs. Troquille had attempted for a few weeks to teach Mrs. Leggett to drive and had taken her out for that purpose on the road on various occasions; she had attempted to teach her to drive the automobile properly. She also knew that Mrs. Leggett had been warned by the Chief of Police of the City of Natchitoches not to drive the vehicle on the streets of Natchitoches. After all of this, she was driving Mrs. Leggett to Many, Louisiana and when they were some five or six miles out of Natchitoches, Louisiana, they stopped at a general store and filling station known as the Spanish Trail Rest, for gasoline. That after stopping, Mrs. Leggett demanded to drive the vehicle and Mrs. Troquille took her seat as a passenger in the vehicle. Shortly afterwards, Mrs. Leggett had an accident which was the result of her gross negligence. We found that Mrs. Troquille had assumed the risk. However, the only element present in the case at bar which was present in the Troquille case is the fact that Mrs. Constantin did know that Mrs. Dubois did not possess a driver's license. She further knew that she was an inexperienced driver but had been assured that she had driven the vehicle on some occasions. We feel that if Mrs. Constantin had driven with Mrs. Dubois on prior occasions and Mrs. Dubois had revealed her inexperience to Mrs. Constantin or had Mrs. Constantin actually heard that Mrs. Dubois did not know how to drive an automobile at all, then our conclusion in this case might be different. However, the evidence falls short of proof of the three elements of the doctrine of assumption of risk.
Counsel for defendant argues in the further alternative that if this court should find that the plaintiffs are entitled to recover judgment, that the damages awarded by the trial judge are excessive. The defendants argue that the award for loss of wages is not supported by evidence. Mrs. Wanda Cain Lafleur testified that she had agreed to hire Mrs. Constantin and Mrs. Constantin was to report for work on the Monday following the accident as a waitress which was the usual type of work which Mrs. Constantin did. The testimony of Mrs. Lafleur and Mrs. Constantin and Mr. Constantin shows that the reason she was unable to begin work on the particular Monday in question was because she had become involved in the accident on the Friday before and was bedridden. Mrs. Lafleur testified that she was prepared to pay Mrs. Constantin between $23 to $25 per week. Her testimony further reveals that she operated her cafe seven days per week and that the cafes which operated six days per week usually paid their waitresses $18 per week. The trial judge awarded plaintiffs the sum of $609 which was $21 per week for the loss of 29 weeks' wages. We can find no error in this award.
The trial judge awarded $2,000 to Mrs. Constantin for pain and suffering. Mrs. Constantin, the plaintiff, was seen by Dr. Edelman, Orthopaedic Specialist in Baton Rouge, Louisiana and by Dr. William L. Meuleman, Orthopaedic Specialist in Lafayette, Louisiana and both found no objective evidence of any injury to Mrs. Constantin's neck. However, Dr. Meuleman did testify on cross-examination that he would feel inclined to state that Mrs. Constantin had sustained a cervical sprain. Dr. F. J. Vincent, an eye, ear, nose and throat specialist, who examined Mrs. Constantin, testified that Mrs. Constantin had seen him and that she had complained of headaches. He stated that Mrs. Constantin was a nervous individual and that she complained of fairly severe headaches. Dr. Albert R. Morgan, a general practitioner of Crowley, Louisiana, testified that Mrs. Constantin was hospitalized from March 29th to April 2, 1960. He was of the opinion that her injuries *274 were severe enough to have disabled her from doing work as a waitress and that she had a whiplash injury to her neck. He also testified that she had received contusions about her right hip, right arm below the elbow, and over the left eye and left forehead. On cross-examination he stated that there was no objective evidence of any pain in the neck but she stated that she did have pain in her neck. We believe that the evidence was sufficient to warrant $2,000 for pain and suffering.
Counsel for defendant further argues that they paid the medical expenses under the medical pay clause of the insurance policy and upon the rear of the check the following language appeared:
"The endorsement hereof by the payee constitutes a full release and satisfaction of all medical payments arising out of occurrance described on the face thereof."
They allege that by endorsing said check shows the intention of the parties that the defendant was to be discharged from any further liability for medical expenses under the policy which medical expenses were in the sum of $802.52. Therefore they maintain that liability under the "liability clause" for medical payments should not be allowed.
The cancelled check offered in evidence was merely payment by the insurer of its contractual obligation to pay the plaintiff for the medical expenses incurred in the accident. Counsel for the defendant argues that the plaintiffs did not pay any extra premium for the policy. While this is true, Mr. Dubois paid an extra premium for this contractual provision and the insurer was obligated under this second obligation to pay the medical expenses in accordance with the policy. See Distefano v. Delta Fire & Casualty Company, La.App., 98 So. 2d 310; Bordelon v. Great American Indemnity Co., La.App., 124 So.2d 634; Dumas v. U. S. Fidelity & Guaranty Company, La.App., 125 So.2d 12, 21.
For the foregoing reasons, the judgment appealed from is affirmed at appellant's cost.
Affirmed.
CULPEPPER, Judge (dissenting).
In my opinion plaintiffs' recovery is barred under the doctrine of voluntary assumption of the risk or contributory negligence, these being terms used indiscriminately by the courts in this type of case. The general rule is stated in 5-A Amer. Jur., Section 790 at pages 737-738 as follows:
"One who rides in an automobile driven by another whom he knows or should known to be a careless or reckless driver, or be inexperienced or lacking in proficiency or skill in driving, is guilty of contributory negligence such as will preclude his recovery if his conduct in voluntarily riding with the driver amounts to a failure to exercise reasonable or ordinary care for his own safety. * * *
"The view has been expressed in a number of cases that the guest accepted or assumed the risks incident to the host's lack of experience or skill in driving and that he must accept the honest and conscientious exercise by the host driver of such skill as he has as to control of the automobile, and this includes exercise of judgment as an element of skill. Guests in an automobile who accept the hospitality of the driver accept whatever risks attend the degree of proficiency of such driver, and his usual and customary habit of driving, with which they are familiar.
"However, the assumption of risk incident to the driver's lack of experience or skill will not preclude recovery by a guest injured as the result of an accident arising out of new dangers or risks not directly connected with the *275 inexperience or lack of skill of the driver."
See also 61 C.J.S. Motor Vehicles § 492 and Amer.Law Institute Restatement of The Law of Torts, Section 466(e) for further statements of the general rule regarding voluntary assumption of the risk of riding with reckless, inexperienced or intoxicated drivers.
Although there are many Louisiana cases dealing with intoxicated drivers, the only reported Louisiana case dealing with inexperienced drivers is Troquille v. American Universal Insurance Company, 127 So.2d 590, which was very recently decided by this court. In the Troquille case, the plaintiff guest knew that the defendant driver did not have a driver's license, had recently taken an examination for a license and failed, had been warned by the city police not to drive, and in addition, plaintiff had actually on several occasions tried to teach the defendant how to drive a car. Despite this knowledge on the part of the plaintiff, she was voluntarily riding in an automobile driven by the defendant at the time of the accident which was caused by the inexperience of defendant. In holding that plaintiff had voluntarily assumed the risk of plaintiff's inexperience as a driver this court cited Elba v. Thomas, La.App., 59 So.2d 732; Dickson v. Peters, La.App., 87 So.2d 187; White v. State Farm Mutual Automobile Insurance Company, 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338; Woods v. King, La.App., 115 So.2d 232, and Lightell v. Tranchina, La.App., 115 So.2d 890, from the long line of Louisiana cases which apply the doctrine of the assumption of the risk where the driver was intoxicated. This jurisprudence involving intoxicated drivers is applicable to the case at bar. There is no substantial difference between the danger of a driver who is incompetent because of drunkenness and that of one who is incompetent because of inexperience. The risk in the former case is that a driver, otherwise competent, may be incompetent during the period of his intoxication. In the latter case, the driver is normally incompetent and will continue to be so until he has acquired sufficient experience and ability to become a competent driver.
In Woods v. King, supra [115 So.2d 237], the court applied the doctrine of assumption of the risk and held as follows:
"It is our appreciation of the evidence herein adduced that as of the time of the accident Mary E. King was not in possession of her normal mental and physical faculties, and plaintiff, her drinking companion of the evening, knew or should have known of this condition. By thus voluntarily riding with the driver in such condition, his right to claim damages is thereby barred. The evidence fully supports these findings."
Applying the above law to the case at bar I find that there is no question but what the accident was caused by the inexperience of Mrs. Dubois as a driver and I find further that there is no question that Mrs. Constantin was voluntarily riding with Mrs. Dubois in order to give her a driving lesson. The only real issue in this case is whether Mrs. Constantin knew or should have known that Mrs. Dubois was so inexperienced that it would be hazardous to ride in a car which she was driving. On this issue the trial court held the following facts which were well known to Mrs. Constantin:
"As the Court appreciates the facts, Mrs. Dubois was learning to drive the Dubois family automobile. She had driven on two or three occasions before the accident occurred but did not feel sure of herself and desired to secure more practice in order that she might ultimately obtain the necessary experience and obtain a driver's license. At the time Mrs. Constantin and Mrs. Dubois were apparently good friends and well acquainted with each other. It was agreed on the date of the accident that Mrs. Constantin would ride with Mrs. Dubois so that she would better learn to operate the automobile * * *"
*276 The facts further show that on the morning of the accident it was Mrs. Constantin who actually backed the Dubois vehicle out of the garage and onto the street at which point Mrs. Dubois took the wheel. This would certainly indicate that Mrs. Constantin knew that Mrs. Dubois could not be trusted even to back the car out of the garage. Under these circumstances it appears inescapable that Mrs. Constantin knew Mrs. Dubois was a very inexperienced driver and any reasonable person under the circumstances should have known that it would be hazardous to ride in a car which Mrs. Dubois was driving.
The basis of the majority opinion seems to be that although Mrs. Constantin knew that Mrs. Dubois didn't have a driver's license and had practically no experience as a driver, she had been told by Mr. Dubois, "Don't worry, my wife can drive". There is considerable doubt in the record as to whether Mr. Dubois actually made such a statement, he having testified that he could not remember saying this and Mrs. Constantin testifying that he did. However, even if Mr. Dubois did make such a statement, it should not have reasonably caused Mrs. Constantin, who already knew all of the above related facts regarding Mrs. Dubois' inexperience, to think that Mrs. Dubois could actually drive a car without danger.
The majority opinion also takes the position, that even though Mrs. Constantin knew these facts regarding Mrs. Dubois' inexperience as a driver, she had actually never before ridden in a car with Mrs. Dubois and had not seen her drive and she therefore had a right to assume that Mrs. Dubois could at least start the car moving forward without running in the ditch. I do not think this is a proper test. Referring to the cases dealing with intoxication, the law appears to be settled that once the court has found the plaintiff knew or should have known the driver was so intoxicated as to affect his competence and that plaintiff with this knowledge, voluntarily rode or continued to ride with such a driver, the doctrine of assumption of the risk is applicable if the driver's incompetence actually caused the accident. In the instant case, I do not see that it would make any difference whether Mrs. Dubois immediately ran in the ditch or whether she kept the car on the road for a short distance and then ran in the ditch. Mrs. Constantin had full knowledge of the driver's inexperience before she entered the car and should have known that such an inexperienced driver might have this very type of accident.
The majority opinion lists the three elements of assumption of the risk as set forth in 61 C.J.S. Motor Vehicles § 486, page 95 as being: (1) A hazard or danger inconsistent with the safety of the occupant. (2) Knowledge or appreciation of the hazard by the occupant. (3) Acquiescence or willingness to proceed in the face of danger. The majority concludes that only the first of these three listed elements is present in the instant case. For the reasons set forth above I am of the opinion that the plaintiff also had knowledge of the hazard of riding in a car driven by Mrs. Dubois, and I am further of the opinion that there can be no question but what Mrs. Constantin acquiesced. The third listed element simply has to do with the question of whether the assumption of the risk was voluntary, and clearly in this case Mrs. Constantin voluntarily entered the car driven by Mrs. Dubois. Therefore, even under the tests used by the majority opinion, I think the doctrine of voluntary assumption of the risk is applicable here.
For the reasons hereinabove set forth, I respectfully dissent.

On Application for Rehearing.

En Banc. Rehearing denied.
CULPEPPER, J., dissents.