SAVOY, Judge.
This is an action instituted by plaintiffs, husband and wife, respectively, against defendant, Mrs. G. B. Pope, for damages sustained by plaintiffs arising out of an automobile-pedestrian accident which occurred on June 6, 1959, in which Mrs. Lutz suffered personal injuries.
Plaintiffs allege that Mrs. Maxie Lutz was standing just off the curb of Southwest Main Street in the City of Bunkie, Louisiana, in front of the Piggly-Wiggly Store, waiting to cross the street, when the defendant, having her automobile parked adjacent to and parallel to the same curb of Southwest Main Street some distance toward plaintiff’s right, reversed her automobile and traveled backwards some distance until the rear of said automobile struck Mrs. Lutz and knocked her to the ground.
Defendant was alleged to be negligent in failing to maintain a proper lookout and in not seeing what she should have seen, in backing at an excessive speed and a further distance than permitted by law, in failing to take proper precautions, and in the careless and reckless operation of her automobile.
Exceptions of no cause and no right of action were filed by defendant. These were referred to the merits by agreement of counsel. Reserving all rights under these exceptions, defendant entered a general denial, and answered further that she exercised the parking maneuver in the customary manner, taking every care and caution incumbent upon her, and that as she was thus slowly backing her car into this parking space,' plaintiff stepped from the curb on the west side of Main Street into the street and directly in back of defendant’s vehicle, and was thereupon struck by said vehicle and suffered minor injuries.
Defendant further answered that the injuries to plaintiff were due entirely by her own negligence, or in the alternative, by her contributory negligence.
*689 The district judge rendered judgment for plaintiffs, awarding $2400 to Mrs. Maxie Lutz and $426.35 to J. M. Lutz. The defendant has appealed to this Court. Plaintiffs have not answered the appeal.
Defendant denies that she struck Mrs. Lutz at all, but contends that if she did, it was because Mrs. Lutz had stepped off the curb directly in the rear of defendant’s automobile, so that defendant had no opportunity to avoid the accident. Defendant contends that since the evidence is conflicting, the plaintiff must convince the court that her testimony is more credible than that of the defendant; that the burden of proof is upon the plaintiffs. Defendant urges that Mrs. Lutz’s testimony was conflicting and evasive, whereas defendant’s testimony was clear and straightforward, and that the evidence is clearly in favor of the defendant. She also contends that Mrs. Lutz sustained only a very mild injury, and if she is to be allowed damages, an award of $500 should he adequate.
Plaintiffs contend that the dispute is a factual one, and since the trial court was in a better position to determine the veracity and credibility of the witnesses, its judgment should not be disturbed on appeal.
The evidence reflects that on June 6, 1959, at approximately six o’clock p. m., Mrs. Maxie Lutz left the Piggly-Wiggly store located on the Main Street of Bunkie, Louisiana, and proceeded to cross the street near the middle of the block to reach her automobile parked on the opposite side of the street. The street runs generally north and south, and the Piggly-Wiggly store is located on the west side. Mrs. Lutz testified that there was a large parking area in front of the store for parallel parking next to the curb. Before stepping off the curb she looked both ways, noticing a space of over a car length to her left and of possibly two and one-half to three car lengths to her right; the car to her right, which later turned out to be defendant’s car, was stopped. She then stepped off and stood some two to three feet from the curb in the street. Observing that the traffic signal light to her left at the corner had apparently just turned green, she had to await the passing of some two or three large diesel trucks which were going south. While her attention was thus directed towards the signal light and the passing traffic, she was struck by the rear bumper of defendant’s automobile. She testified that the blow knocked her down, and she began rolling in the street towards the north in order to keep from being run over by defendant’s automobile.
The defendant testified that she was going to the Piggly-Wiggly store and drove forward into the parking area near the curb, which she estimated to be about two to two and one-half parking spaces in length. After she pulled in and stopped, she shifted into- reverse gear and immediately began backing at a very slow rate of speed in an effort to park closer to the curb. She looked into the rear view mirror, and as she began backing she looked backwards over her shoulder through the rear window of her car. She stated her vision was unobstructed and the way was clear for some distance behind her to other parked cars. She saw no one in the street, but several persons on the sidewalk. She testified that as she thus backed slowly and carefully, an unidentified man knocked on the window of her car telling her to stop as there was someone on the street in the back of her car, and she stopped promptly, got out of the car, and saw Mrs. Lutz being helped off the street. She denied hitting Mrs. Lutz, as she believed she would have felt the slightest blow had her bumper struck Mrs. Lutz.
Mrs. Maxie Lutz testified that defendant made the following statement to her after the accident:
“I wasn’t looking in my rear view mirror when I backed, and I hope you’re not hurt. I have insurance, I’m covered, and I would rather take you to a doctor so I will feel satisfied. I didn’t want to walk down the street — I back *690 ed because I didn’t want to walk down the street in my shorts.”
Plaintiff’s neighbor, Mrs. Cary M. Stutts, who did not actually see the accident but arrived immediately thereafter, substantiated this by testifying she had heard defendant make the above statement.
Defendant denied making the statement that she had insurance or had failed to look into the rear view mirror.
The trial court relied on the testimony of plaintiffs’ witnesses, and this Court is convinced that the judgment of the trial court was correct.
The trial court properly held that the defendant was guilty of negligence. Defendant admitted that she backed a distance of possibly a car’s length, and never saw Mrs. Lutz until after the accident. She would have continued backing a further distance had the unidentified man not knocked on her window and asked her to stop her automobile. Had the defendant looked, she could have discovered Mrs. Lutz’s peril and could easily have stopped before striking her.
The next matter for determination by the Court is the quantum of damages to which Mrs. Lutz is entitled for the injuries sustained in the accident.
Mrs. Lutz was seen by the following doctors: Dr. H. G. Temple, Dr. R. C. Scott, Dr. P. M. Davis, Jr., Dr. T. E. Banks and Dr. D. M. Kingsley.
Dr. Temple saw Mrs. Lutz shortly after the accident occurred on June 6, 1959. He was busy at the time and superficially examined her arm in the hallway of his clinic. He determined that there was no fracture and the injury was of a minor nature and no treatment was necessary. No record was kept of this visit. He did not recall whether a prescription was given Mrs. Lutz. On June 8, 1959, Dr. Temple examined her again on her complaints of general soreness. He examined her blood pressure, took her weight and temperature, and took a urine specimen. Because of excessive weight and blood pressure, he prescribed medication for hypertension to reduce the blood pressure, medication to curb her appetite and placed her on a diet. No x-rays were taken, and no clinical diagnosis was made as to her injuries. Dr. Temple did not recall whether he examined Mrs. Lutz for a back injury. He felt the injuries sustained by her in the accident were of an insignificant nature and did not warrant further investigation or treatment.
Dr. Scott treated Mrs. Lutz on June 19, 1959, for slight hypertension and referred her to Dr. Davis for her back condition. He took no x-rays and did not examine or treat her for her back condition.
Dr. Davis, a specialist in orthopedics, first examined Mrs. Lutz on June 26, 1959. Dr. Davis found evidence of restricted back motion, muscle spasm, and noted that the patient complained of pain on palpation between the spines of L-5 and S-l, and also in the paravertebral muscles to the left of these vertebrae. Pain was also noted on palpation of the entire left hip, and lesser pain on palpation of the right hip. There was evidence of contused areas over her left elbow and over her right knee. X-rays showed a very marked lumbosacral angle and spur formation present around the bodies of L-3 and ~LrA. Dr. Davis’ diagnosis following his study showed evidence of a sprain of the lumbosacral spine, acute and subsiding. He testified that an acute sprain would manifest itself almost immediately, and it would be unusual to have such a sprain appear three days after an injury. The only explanation he could suggest would be that the patient did not have a very severe back injury and the elbow was hurting severely enough for her not to notice the back pain. Mrs. Lutz was seen on fifteen further occasions, ending November 25, 1960 . A wide lumbosac-ral corset was prescribed, and he suggested ways for her to relieve pain and placed her on physical therapy. During the treatments he prescribed medications. He felt she still had discomfort at the time of her *691 last visit. Because of her obesity and poor posture he felt she would likely have a chronic backache for some time. In summary, Dr. Davis definitely found that the plaintiff was still suffering with a backache as a result of the accident eighteen months afterwards and that she would continue to do so for some time to< come. He stated specifically as follows:
“I think that more than likely this patient will have — continue to have a chronic backache for a good while to come. This chronic backache may completely disappear and she may revert to what she was before her accident. Then again the pain may continue, being a nagging pain which a lot of people have most of their life. The third thing that could happen is the patient could continue to have pain which became severe enough to where operative intervention or a brace would be indicated so as to get rid of her pain.”
Dr. Banks, a specialist in orthopedics, examined Mrs. Lutz on August 9, 1960. From his clinical examination and review of the x-rays which had been previously taken, he diagnosed a chronic low back strain with mild sciatic irritation on the left. He felt she was suffering from pains in her back and determined that treatment should consist of having her lose at least twenty pounds of weight and strengthen the abdominal muscles. After that, it was his opinion that she would probably not have enough pain left to justify any other treatment. If this were not done, he felt it was still possible that she had pain at the time of the trial, approximately eight months later. His diagnosis was actually a lumbo-sacral strain, a question of some chronic instability of the back or chronic stretching of the ligaments which produced mild, low grade discomfort aggravated by excessive activities and relieved by rest, not severely disabling in nature.
Dr. Kingsley, an orthopedic surgeon, examined Mrs. Lutz on December 1, 1960. From his clinical examination and x-rays he concluded that she had some postural deviations from normal, typical of an obese person. It was his opinion that if she had sustained any form of body strain or sprain superimposed upon the condition of her body, all evidence of that had disappeared. He estimated such a sprain would take from three to six weeks for recovery, and allowing the full benefit pf doubt, considering her obesity and bad posture, a total period of recovery could be extended to two or three months. Allowing a period of two to three days following an accident for development of back pain, Dr. Kingsley would not relate such an accident to her back condition unless some other condition was so acute that all her attention was devoted to that other acute condition.
Counsel for defendant cited the cases of Henderson v. Central Mutual Insurance Co. (La.App., 2 Cir., 1959), 111 So.2d 351; Fort v. Northern Insurance Co. of New York (La.App., 2 Cir., 1959), 111 So.2d 874; Dowies v. Traders & General Insurance Co. (La.App., 3 Cir., 1960), 124 So.2d 610; Frass v. Marquette Casualty Company (La.App., 4 Cir., I960); 125 So.2d 174; Dyer v. Stephens Buick Co. (La.App., 4 Cir., 1960) 125 So.2d 185; Gallioto v. Chisholm (La.App., 4 Cir., 1960) 126 So.2d 63; Constantin v. Bankers Fire and Marine Insurance Co. (La.App., 3 Cir., 1961), 129 So.2d 269.
In the case of Henderson v. Central Mutual Insurance Company, supra, plaintiff was awarded $3,000 for injuries substantially different from those of Mrs. Lutz.
In the case of Fort v. Northern Insurance Co. of New York, supra, a jury award of $1,500 plus $303.55 special damages was increased to $2,303.55. The plaintiff suffered mutiple contusions over the body, sprain of the right ankle, and fractures of three ribs. She was hospitalized for eight days, after which she stayed in bed at home for a week, and did not return to her employment as a stenographer until approximately four weeks later. Because of aggravation of pre-existing arthritis in the right ankle, she experienced some pain after *692 she returned to work, but had recovered after approximately eleven months.
In the case of Dowies v. Traders and General Insurance Company, supra, the plaintiff was awarded $2,500 for a whiplash injury to her neck. She was placed in traction, wore a neck brace and was discharged from treatment six months after her injury by the treating orthopedic surgeon who estimated that she would be free from symptoms approximately eleven months after the accident.
In Frass v. Marquette Casualty Company, supra, plaintiff was awarded $2500 for injuries consisting of severe muscle spasms of the neck, with a straightening of a portion of the neck and loss of the normal spinal curvature of the neck, contusions of the body, abrasions of the left knee and a severe sprain of the third finger of the right hand. He visited the physician 28 times and lost 10 days from work.
In Dyer v. Stephens Buick Company, supra, an award of $600 for pain and suffering was increased to $1000, increasing the total judgment to $2,125.75. The plaintiff suffered an acute lumbosacral strain which required strapping, medication and bed rest. He suffered considerable pain and was unable to return to work for a period of three months.
In Gallioto v. Chisholm, supra, plaintiff was awarded $750. Plaintiff, who was 61 years of age, suffered a bruising of the head and neck area, a sprain of the ligaments at the junction of the neck and body, and contusions of the left shoulder and chest. The testimony shows that ordinarily these injuries would be minor in comparison to the actual trauma, but because of plaintiff’s arthritis and age, recovery was prolonged beyond the usual eight week period generally expected.
In Constantin v. Bankers Fire & Marine Insurance Company, supra, plaintiff was awarded $2,000, in addition to $609 special damages, for injuries consisting of contusions about her right hip, right arm, over the left eye and forehead, and a whiplash injury to her neck. Plaintiff was a nervous person and complained of fairly severe headaches.
In the instant case, according to the testimony of the orthopedic surgeons, Mrs. Lutz’s back strain was not of a very severe nature since the pain did not manifest itself until one to three days later. Normally such a strain would have healed within three months at the latest. Superimposed upon poor postural deviations from normal and excessive weight of Mrs. Lutz, the pain symptoms persisted for an extended time beyond three months. The attending physician found that as a result of the accident the plaintiff still suffered from the chronic backache at the time of the trial about 18 months after the accident, and would continue to do so for some time to come.
After reading all of the cases cited herein in connection with the facts in the instant case, we are of the opinion that the award made by the trial judge was neither excessive nor inadequate.
For the reasons assigned, the judgment of the district court is affirmed. Defendant is to pay all costs of this appeal.
Affirmed.